**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **GUADALUPE HERRERA.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Case No. 3-08-CV-1309-N** |
| | § | |
| **MARY KAY INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT MARY KAY INC.'S BRIEF IN SUPPORT OF ITS**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Respectfully submitted,

/s/ John L. Turner, Jr.
Rodolfo Rodríguez, Jr.
  Texas Bar No. 17148480
John L. Turner, Jr.
  Texas Bar No. 24051591
Bridget A. Blinn
   Texas Bar No. 24045510

**GRUBER HURST JOHANSEN & HAIL, LLP**
Fountain Place
1445 Ross Avenue, Suite 2500
Dallas, Texas 75202
Telephone: 214-855-6800
Facsimile: 214-855-6808

**ATTORNEYS FOR DEFENDANT**

# TABLE OF CONTENTS

I.     BACKGROUND AND SUMMARY OF MOTION..........................................................1

II.    PLAINTIFF'S COMPLAINT..............................................................................................2

III.   APPLICABLE SUMMARY JUDGMENT PRINCIPLES...................................................2

IV.    GROUNDS FOR SUMMARY JUDGMENT ....................................................................3

V.     STATEMENT OF MATERIAL FACTS & ALLEGATIONS...........................................4

      A.     Herrera's Employment with Mary Kay. .................................................................4

      B.     Herrera's Complaints Against Eduardo Villalobos. .............................................10

      C.     Herrera's Complaints Against Ana Macedo. .........................................................11

      D.     Herrera's Reporting of the Alleged Wrongful Behavior. ....................................12

            1.     Herrera's General Harassment Allegations. . ............................................14

            2.     Mary Kay Investigates Herrera's Complaints of May 2006. ...................15

            3.     Herrera Accuses Villalobos and Macedo of Theft....................................19

            4.     Herrera Allegedly Reports Harassment to Cheshire................................19

VI.    ARGUMENT AND AUTHORITIES. .............................................................................21

      A.     Herrera's Sexual Harassment Claims Fail as a Matter of Law.............................21

            1.     Herrera Cannot Prove a Prima Facie Case of *Quid Pro Quo*
                   Harassment With Respect to Either Macedo or Villalobos,
                   Because Neither Macedo nor Villalobos Effected Any Tangible
                   Employment Actions Against Herrera.......................................................22

            2.     Herrera Cannot Prove a Hostile Work Environment Claim.. ...................24

                a.     Herrera's Hostile Work Environment Claim as to Macedo
                     Is Barred for Failure to Exhaust Administrative
                     Prerequisites. ...............................................................................24

                b.     Herrera's Hostile Work Environment Claim as to
                     Macedo Is Time-Barred..............................................................25

       c.     Herrera Cannot Demonstrate That Macedo's or Villalobos' Alleged Actions Were Severe and Pervasive Enough to Alter the Terms and Conditions of her Employment....................26

           (1)    Macedo's Alleged Conduct Was Not Severe and Pervasive...........................................................................28

           (2)    Villalobos' Alleged Conduct Was Not Severe and Pervasive...........................................................................29

       c.     Mary Kay has Conclusively Established an Affirmative Defense Under *Faragher* and *Ellerth*. ...........................................31

           (1)    Mary Kay Exercised Reasonable Care to Prevent and Correct Harassing Behavior. .......................................31

           (2)    Herrera Unreasonably Failed to Take Advantage of Preventive or Other Corrective Opportunities Provided by Mary Kay......................................................32

B.     Herrera Cannot Establish Her Claim For Retaliation as a Matter of Law. ...........33

    1.     Mary Kay Has Articulated Legitimate, Non-Discriminatory, Non-Retaliatory Reasons for Its Actions.  .......................................................34

    2.     Herrera Has No Evidence of Pretext as to Any of Mary Kay's Legitimate, Non-Discriminatory, Non-Retaliatory Reasons for Its Actions. ................................................................................................35

       (a)    Termination of Herrera's Employment..........................................35

       (b)    Occasional Assignment to Heavy Zones. ......................................36

    3.     Herrera's Claim for Gender Discrimination Fails as a Matter of Law. .....37

       (a)    There Is No Evidence That Similarly-Situated Male Employees Were Treated Differently..............................................................37

       (b)    There Is No Evidence That Defendant's Legitimate, Non-Discriminatory, Non-Retaliatory Reason for the Termination of Plaintiff's Employment Is a Pretext for Discrimination...........................................................................38

C.    Herrera's Claim for Assault Fails as a Matter of Law, Because There is No Evidence that Villalobos Was Acting Within the Scope of His Employment. ........................................................................................38

VII.   CONCLUSION.................................................................................................39

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aldrup v. Caldera*,
    274 F.3d 282  (5th Cir. 2001) ........................................................33

*Anderson v. Liberty Lobby, Inc.*,
    77 U.S. 242 (1986)..........................................................................3

*Burlington Indus., Inc. v. Ellerth*,
    524 U.S. 742 (1998).............................................4, 21, 22, 23, 26, 31

*Butler v. Ysleta Indep. Sch. Dist.*,
    161 F.3d 263 (5th Cir. 1998) .........................................................26

*Byers v. The Dallas Morning News, Inc.*,
    209 F.3d 419 (5th Cir. 2000) .........................................................33

*Caro v. City of Dallas*,
    17 F. Supp. 2d 618 (N.D. Tex. 1998) ..............................................27

*Casiano v. AT&T Corp.*,
    213 F.3d 278 (5th Cir. 2000)) ........................................................21

*Davis v. Dallas Area Rapid Transit*,
    383 F.3d 309 (5th Cir. 2004) .........................................................35

*DeAngelis v. El Paso Mun. Police Officers Ass'n*,
    51 F.3d 591 (5th Cir. 1995) ...........................................................27

*Estate of Martineau v. ARCO Chem. Co.*,
    203 F.3d 904 (5th Cir. 2000) .........................................................24

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998)..........................................4, 21, 26, 27, 29, 31

*Fontenot v. Upjohn Co.*,
    780 F.2d 1190 (5th Cir. 1986) .........................................................3

*Forsyth v. Barr*,
    19 F.3d 1527 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994) .................3

*Gearhart v. Eye Care Ctrs. of America, Inc.*,
    888 F. Supp. 814 (S.D. Tex. 1995) ................................................28

*Grimes v. Texas Dep't. of Mental Health & Mental Retardation*,
102 F.3d 137 (5th Cir. 1996) ............................................................................3

*GTE Southwest, Inc. v. Bruce*,
998 S.W.2d 605 (Tex. 1999) .........................................................................38, 39

*Gupta v. East Texas State Univ.*,
654 F.2d 411 (5th Cir. 1981) ...........................................................................24

*Harris v. Forklift Systems, Inc.*,
510 U.S. 17 (1993) ...........................................................................................26

*Hearn v. Greyhound Lines, Inc.*,
No. 3:97-CV-1483-R, 1998 U.S. Dist. LEXIS 11375 (N.D. Tex. July 21, 1998)............34

*Hockman v. Westward Communications, L.L.C.*,
282 F. Supp. 2d 512 (E.D. Tex. 2003) ......................................................28, 30

*Huckabay v. Moore*,
142 F.3d 233 (5th Cir. 1998) ...........................................................................25

*Indest v. Freeman Decorating, Inc.*,
164 F.3d 258 (5th Cir. 1999) ...............................................................27, 27, 29

*Ingram v. City of Farmers Branch, Tex.*,
No. 3:00-CV-0560-G, 2001 U.S. Dist. LEXIS 8580 (N.D. Tex. June 25, 2001) .............28

*Jones v. Seago Manor Nursing Home*,
No. 3:01-CV-2406-AH, 2002 U.S. Dist. LEXIS 17135 (N.D. Tex. Sept. 11, 2002) ........28

*Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish*,
No. 07-31027, 2009 U.S. App. LEXIS 10451 (5th Cir. La. May 12, 2009) ....................37

*La Day v. Catalyst Tech, Inc.*
302 F.3d 474 (5th Cir. 2002) ....................................................................21, 22

*Lauderdale v. Texas Dep't. of Criminal Justice*,
512 F.3d 157 (2007) ................................................................................31, 32, 33

*Louisiana Office of Cmty. Servs.*,
47 F.3d 1438 (5th Cir. 1995) .........................................................................36

*Mattern v. Eastman Kodak Co.*,
104 F.3d 702 (5th Cir. 1997) ...........................................................................33

*McDaniel v. Babbitt*,
    Civil Action No. 3:96-CV-3423-G, 1998 U.S. Dist. LEXIS 1850
    (N.D. Tex. Feb. 11, 1998) ........................................................................33, 34

*McMillan v. Rust Coll., Inc.*,
    710 F.2d 1112 (5th Cir. 1983) ........................................................................34

*Medina v. Ramsey Steel Co.*,
    238 F.3d 674 (5th Cir. 2001) ........................................................................34

*Meritor Savings Bank, FSB v. Vinson*,
    477 U.S. 57 (1986) ........................................................................26

*Mernik v. Classic Cars, Inc.*,
    No. 3:99-CV-1327-P, 2000 U.S. Dist. LEXIS 9373 (N.D. Tex. June 28, 2000) ...............28

*National Assn of Gov't Employees v. City of San Antonio*,
    40 F.3d 698 (5th Cir. 1994) ........................................................................24

*National Railroad Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002) ........................................................................25

*Nicholson v. Dart Container Corp. Co. of Miss. LLC.*,
    602 F. Supp. 760 (S.D. Miss. 2008) ........................................................................33

*Odom v. Frank*,
    3 F.3d 839, 847 (5th Cir. 1993) ........................................................................36

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*,
    245 F.3d 507 (5th Cir. 2001) ........................................................................37

*Oncale v. Sundowner Offshore Svcs., Inc.*,
    523 U.S. 75 (1998) ........................................................................26

*Reeves v. Sanderson Plumbing Prod., Inc.*,
    530 U.S. 133 (2000) ........................................................................35

*Scott v. University of Miss.*,
    148 F.3d 493 (5th Cir. 1998) ........................................................................3

*Septimus v. Univ. of Houston*,
    399 F.3d 601 (5th Cir. 2005) ........................................................................25, 29

*Shepherd v. Comptroller of Pub. Accounts*,
    168 F.3d 871 (5th Cir. 1999) ........................................................................27, 29, 30

*Sherrod v. Am. Airlines, Inc.,*
    132 F.3d 1112 (5th Cir.1998)) ................................................................................33, 34

*Smith v. M Sys. Food Stores, Inc.,*
    297 S.W.2d 112 (1957)..........................................................................................39

*Taylor v. Texas Dept. of Criminal Justice – Inst. Div.,*
    No 3:98CV2972-AH, 2000 U.S. Dist. LEXIS 5853 (N.D. Tex. May 1, 2000)................31

*Taylor v. United Parcel Servs. of Am., Inc.,*
    Civil Action No. 3:02-CV-2536-G, 2003 U.S. Dist. LEXIS 23510
    (N.D. Tex. Dec. 31, 2003) .....................................................................................34

*Varela v. National Reinsurance Corp.,*
    No. CA3:97- CV-2088-BC, 1998 WL 119529 (N.D. Tex. Mar. 5, 1998) .......................28

*Wallace v. Methodist Hosp. Sys.,*
    271 F.3d 212 (5th Cir. 2001) .................................................................................37

*Watts v. Kroger Co.,*
    170 F.3d 505 (5th Cir. 1999) .................................................................................22

*Webb v. Cardiothoracic Surgery Assocs. of North Texas,*
    139 F.3d 532 (5th Cir. 1998) .................................................................................25

*Weller v. Citation Oil & Gas Corp.,*
    84 F.3d 191, 194 (5th Cir. 1996) ...........................................................................30

*Williams v. Barnhill's Buffet Inc.,*
    290 Fed. Appx. 759 (5th Cir. 2008)...............................................................21, 22, 23

*Williams v. Simmons Co.,*
    185 F. Supp.2d 665 (N.D. Tex. 2001) .....................................................................24

*Wrenn v. G.A.T.X. Logistics, Inc.,*
    73 S.W.3d 489 (Tex. App.—Fort Worth 2002, no pet.) ...................................................39

*Wyatt v. Hunt Plywood Co.,*
    297 F.3d 405 (5th Cir. 2002) ................................................................................33

*Zipes v. Trans World Airlines, Inc.,*
    455 U.S. 385 (1982)..............................................................................................25

## FEDERAL STATUTES

Fed. R. Civ. P. 56..................................................................................................................2, 3

42 U.S.C. § 2000-e................................................................................................................2

## STATE STATUTES

Texas Labor Code § 21 ............................................................................................................2

COMES NOW Defendant, Mary Kay Inc. ("Defendant," the "Company" or "Mary Kay"), and files this Brief in Support of its Motion for Summary Judgment (the "Motion") on all claims and causes of action asserted by Plaintiff Guadalupe Herrera ("Plaintiff" or "Herrera") in this lawsuit, and would respectfully show the Court as follows:

## I.
## BACKGROUND AND SUMMARY OF MOTION

Mary Kay is entitled to summary judgment in its favor and a dismissal of all claims brought against it because Plaintiff cannot, as a matter of law, establish her claims of sexual harassment, retaliation under Title VII, and assault. The uncontroverted evidence establishes that Plaintiff was terminated from her position as an Order Filler ("Order Filler") at the Mary Kay Southwest Distribution Center on January 21, 2008 as a result of her continued disruptive workplace behavior. During her nearly nine years of employment with Mary Kay, Plaintiff had been warned many times concerning her need to improve her relationship with her co-workers, and just prior to her termination she was put on suspension for intentionally failing to respond to multiple pages requesting her assistance on the warehouse floor. During the investigation of this paging incident, Defendant learned that Plaintiff had asked a co-worker to lie for her and tell the Company that they had not heard the pages.

After Plaintiff returned from her suspension she made remarks threatening harm to her co-workers, and the investigation of the comments identified additional evidence of other threats Plaintiff had made in the past. Meanwhile, a concurrent investigation of Plaintiff's reports of favoritism on the line determined that the central problem reported by employees on the line was abusive behavior and bullying by Plaintiff herself.

Given the numerous warnings and counseling that Plaintiff had received regarding her interpersonal skills, the need to improve her relationships with her co-workers, and her threats

against her coworkers coming so soon after her suspension, it became clear that Plaintiff's behavior would not improve and that termination was both appropriate and warranted.  Plaintiff's serving and unsupported allegations of alleged harassment by co-workers Eduardo Villalobos and Ana Macedo are simply her attempt to avoid the consequences of her own continued disruptive conduct.

In short, Mary Kay terminated the Plaintiff based on legitimate, non-discriminatory reasons that had absolutely nothing to do with any report of harassment by the Plaintiff and therefore Plaintiff's claims of harassment and retaliation should be dismissed as a matter of law. In addition, the undisputed facts will show that many of Plaintiff's harassment claims are time-barred or were not reported prior to her termination or as a part of her EEOC charge.  Herrera's assault claim cannot stand because the undisputed summary judgment evidence establishes that her alleged assailant was not acting in the course or scope of his employment in committing the alleged acts.

## II.
## <u>PLAINTIFF'S COMPLAINT</u>

In Plaintiff's live pleading, her Second Amended Complaint ("<u>Complaint</u>"), Plaintiff specifically alleges causes of action for: hostile work environment sexual harassment, quid pro quo sexual harassment, and "discrimination/retaliation" under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, *et seq.* ("<u>Title VII</u>") and Section 21 of the Texas Labor Code, in addition to a claim for common law.[1]

## III.
## <u>APPLICABLE SUMMARY JUDGMENT PRINCIPLES</u>

It is well established under Fed. R. Civ. P 56 that summary judgment shall be granted when there is no genuine issue as to any material fact and the movant is entitled to judgment as a

---

[1] Complaint at 2, ¶ 5.

matter of law.[2]   Unsubstantiated assertions of unlawful conduct are not summary judgment evidence.[3]   To avoid summary judgment in an employment discrimination case, the plaintiff must instead present evidence, not simply conjecture and speculation, of discrimination.[4] Additionally, a plaintiff must set forth *specific facts* showing there is a genuine issue for trial.[5] Merely discrediting the movant's testimony is not a sufficient basis for finding a fact issue.[6] Assertions of ultimate facts without supporting specifics will not suffice to avoid summary judgment.[7]   Summary judgment should be granted "not only when the non-movant presents no evidence, but also when there is not a sufficient conflict in substantial evidence to create a jury question."[8]   "A mere scintilla of evidence is insufficient to present a question for the jury."[9]

## IV.
## GROUNDS FOR SUMMARY JUDGMENT

Defendant's Motion for Summary Judgment is based on the following grounds:

A.     Plaintiff's sexual harassment claims fail as a matter of law because:

   1.     Herrera cannot prove a prima facie case of *quid pro quo* harassment because neither Ana Macedo nor Eduardo Villalobos, who are the alleged harassers, effected any tangible employment actions against Herrera. Further, there was no complaint of harassment by Macedo listed in the EEOC charge filed by Plaintiff.

   2.     Herrera cannot prove a hostile work environment claim**.**

      a.     Herrera's hostile work environment claim as to Macedo is time-barred because all of Plaintiff's allegations with respect to Macedo occurred outside the 300 day limitations period.

      b.     Macedo's and Villalobos' alleged actions were not, as a matter of law, severe and pervasive enough to alter the terms and conditions

---

[2] FED. R. CIV. P. 56.
[3] *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).
[4] *Grimes v. Texas Dep't. of Mental Health & Mental Retardation*, 102 F.3d 137, 140 (5th Cir. 1996).
[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).
[6] *Id.*
[7] *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).
[8] *Scott v. University of Miss.*, 148 F.3d 493, 504 (5th Cir. 1998).
[9] *Id.*

of Plaintiff's employment;

    c.    Mary Kay has conclusively established an affirmative defense under *Faragher* and *Ellerth*.

B.    Plaintiff cannot establish her claim for retaliation as a matter of law because:

    1.    Mary Kay has articulated a legitimate, non-discriminatory, non-retaliatory reason for its actions;

    2.    There is no evidence of pretext as to any of Mary Kay's legitimate, non-discriminatory, non-retaliatory reasons for its actions; and

    3.    There is no causal connection between the alleged complaints and Mary Kay's actions.

C.    Herrera's claim for gender discrimination fails as a matter of law because"
    1.    There is no evidence that similarly-situated male employees were treated differently than Plaintiff.

    2.    There is no evidence of pretext as to any of Mary Kay's legitimate, non-discriminatory, non-retaliatory reasons for its actions.

D.    Herrera's claim for assault fails as a matter of law, because, even taking Plaintiff's allegations as true, there is no evidence that Villalobos was acting within the scope of his employment when committing the alleged acts.

**V.**
**STATEMENT OF MATERIAL FACTS & ALLEGATIONS**

For purposes of this Motion only, Mary Kay asks the Court to accept as true the following facts and allegations of the Plaintiff.[10]

**A.    Herrera's Employment with Mary Kay.**

Plaintiff worked as an Order Filler at Mary Kay's Southwest Facility in Farmers Branch, Texas from May 3, 1999 until January 21, 2008.[11] Herrera's job required her to work as part of a

---

[10] Mary Kay reserves the right to introduce evidence at trial contradicting the veracity or admissibility of any of Plaintiff's allegations.

[11] Herrera Dep. at 26, 31 (App. 8-9); Declaration of Lisa Johnson ("Johnson Dec.") (App. 355-60); Declaration of Rick Felton ("Felton Dec.") at Exhibit A (App. 323).

team of employees working on a large U-shaped assembly line.[12]  The various stations on the assembly line are referred to as "zones."[13]  Typically, the person at the front of the line (the "Line Starter") would place a box and order sheet on the conveyor belt, and when the box reached a particular zone, the Order Filler responsible for that zone would "pick" any products ordered from his or her zone and place the items in the box.[14]  Zone assignments have no bearing on pay, benefits, or shift length.[15]

Although supervisors were constantly trying to balance the zones to keep the work even among the Order Fillers, due to ordering variations and the introduction of new products, there were periods of time when some zones were "heavier" than others.[16]  Because her technical ability was generally above that of her peers, Herrera was sometimes assigned to these heavier zones on the line when it was necessary to prevent the line from getting backed up.[17]  This ability to occasionally cover these heavier zones positively impacted Plaintiff's performance reviews, which consistently reflected that her technical performance as an Order Filler was very good or outstanding.[18]

Although Herrera's work quality and productivity remained commendable, beginning in 2002, her performance reviews began to reflect her difficulty in getting along with her team members and she was frequently directed to improve her interpersonal skills.[19]

In fact, Herrera was formally disciplined by Mary Kay on several occasions as a result of

---

[12] Declaration of Gale Touchstone ("Touchstone Dec") at ¶3 (App. 332).
[13] *Id.*
[14] *Id.*
[15] *Id.*; *see also* Herrera Dep. at 82-83 (App. 22).
[16] Touchstone Dec. at ¶ 4 (App. 332).
[17] Touchstone Dec. at ¶ 5 (App. 332-33).
[18] *See* Johnson Dec. (App. 369, 372, 374, 375, 380, 383).
[19] Johnson Dec. (App. 370, 372, 374-75, 378, 381, 383, 389, 390); *see also* Herrera Dep. At 101, 121 (App. 27, 132).

her recurring problems in interactions with her fellow employees and her lack of teamwork.[20] On March 28, 2001, Herrera received and signed a written "formal reminder" for providing misleading and inaccurate information to Mary Kay management during an investigation of a disruptive incident on the assembly line.[21]   Herrera was given her second formal disciplinary notice (which she also signed) on July 12, 2005, admonishing her for absenteeism which involved her calling in absent on multiple "blocked days," which is forbidden because of the high volume of work during these days.[22]   Herrera received an "informal counseling" in April of 2006 after she inappropriately insulted a Mary Kay Human Resources employee of Hispanic origin by calling her a "racist" because she would not give Hispanic employees the day off to attend a rally protesting proposed anti-immigration laws.[23]   Herrera received another disciplinary action on June 18, 2007, following the investigation of a complaint brought against Herrera by a fellow employee.   It was determined that Herrera again provided misleading and inaccurate information during the investigation and it was also discovered that Herrera was participating in – if not instigating – inappropriate gossip about a co-worker which created a disruption in the workplace that was impacting morale.[24]   Herrera signed this July 2007 disciplinary notice.[25]

Herrera's advancement and promotion was stymied by her chronic difficulty in working cooperatively with the other employees on the line.[26]   Herrera's supervisor, Gale Touchstone, observed that this created a high level of disappointment and frustration for Herrera.[27]   Despite her interpersonal challenges, Herrera's strong technical skills as an Order Filler made her a

---

[20] Johnson Dec. (App. 404-10)
[21] *Id.* (App.410).
[22] *Id.* (App. 407).
[23] Herrera denies that she ever made that statement.  (Herrera Dep. at 141-42 (App. 37).
[24] Johnson Dec (App. 404).
[25] Despite signing the notice, Herrera now states for the first time her belief that she reported what she believed to be inappropriate workplace behavior of a sexual nature involving fellow employees Ana Macedo and Sami Trejo.  Herrera Dep. at 225-27 (App. 56)
[26] Touchstone Dec. at ¶ 6 (App. 333).
[27] Touchstone Dec. at ¶ 7 (App. 333).

valued employee whom the Company wanted to see succeed.[28]

A series of incidents occurring in January 2008, however, resulted in Mary Kay's decision to terminate Herrera's employment.  First, on January 10, 2008, Herrera was issued a Final Written Warning for an incident occurring the previous day, January 9.[29]  On that day, Line Coordinator Ana Macedo paged Herrera three times to request her assistance on a project at the line, but Herrera never answered the call.[30]  Macedo grew frustrated by Herrera's lack of responsiveness and reported the incident to management:

> Q.  All right, and what did you do then?
>
> A.  I was walking and Mary Lou [Rosa] stopped me and I was in tears.
>
> Q.  Why?
>
> A.  Because it wasn't the first time that [Herrera] had not obeyed orders or had – if I asked her to do something, you know, she would either make a face or would do something.  So I was just a little frustrated.[31]

Together with Supervisor Craig Williams, Mary Kay's Human Resources Generalist Mary Lou Rosa ("Rosa") conducted an investigation of the incident.   In interviews they conducted, other employees in Herrera's vicinity that day confirmed "that they heard the three pages via the intercom system."[32]  Based on this information, Mary Kay decided to give Herrera the final written warning for "refusing to perform a task" and "disruption of the workplace that affects the work and morale of other employees."[33]   When presented with the notice on January 10, 2008, Herrera refused to sign.[34]

The next day, January 11, 2008, Rosa received a complaint about alleged threats Herrera

---

[28] *Id.* at ¶ 6 (333)
[29] Johnson Dec. (App. 407).
[30] *Id.*; Deposition of Ana Macedo ("Macedo Dep.") at 57-58 (App. 205-06)); Johnson Dec. (App.403).
[31] Macedo Dep. at 59-58 (App. 205-06).
[32] Declaration of Mary Lou Rosa ("Rosa Dec") at Exhibit A (App. 326-27).
[33] Johnson Dec (App.403).
[34] *Id.*; Rosa Dep. at 38 (App. 222).

had made against one or more of her fellow employees.[35]   The reporting employee, Eduardo Villalobos ("Villalobos"), alleged that on January 10, 2008, the same day Herrera had refused to sign the final written warning, Villalobos relayed a company announcement that the following day was a "theme day" and that employees could wear Dallas Cowboys clothing to work.[36] When Villalobos approached Herrera, however, she responded that she was going to wear black "because of all of the people who are going to die."[37]

Rosa investigated Villalobos' claims.   From the interviews she conducted of Herrera's fellow employees on the line, Rosa was able to verify key facts underlying Villalobos' accusations:  First, Margie Elizondo reported hearing Herrera say that she would wear black for the "theme day," and further heard Herrera say "something about mourning somebody or death something."[38]   Remigia Garcia informed Rosa that she also heard Herrera make a comment about wearing black.[39]   Iris Torres ("Torres") also told Rosa that she had overheard Herrera make a comment about wearing black.[40]   During the course of Rosa's investigation, Maria Najarro ("Najarro") told Rosa that during 2007 Herrera had made a similar comment, but more pointed, "about hiring someone to kill [Villalobos]."[41]   Najarro reported that Herrera had made the comment while the two were discussing a school shooting that was being discussed on the news, and that Herrera told Najarro that she could do the same to Villalobos.[42]

Also on January 11, 2008, while she was on suspension pending the investigation of her

---

[35] Deposition of Mary Lou Rosa ("Rosa Depo") at 8-9, 46 (App. 212-13, 223); Felton Dec. at Exhibit A (App. 323).
[36] Rosa Dep. at 9-10, 50 (App. 213-14, 224).
[37] Rosa Dep. at 9-10, 50-51 (App. 213-14, 224-25); *see also* Felton Dec. at Exhibit A (App. 323); Deposition of Eduardo Villalobos ("Villalobos Dep.") at 39-40 (App. 233-34).
[38] Rosa Dec. at Exhibit A (App. 326).
[39] *Id.*
[40] *Id.* (App. 327).
[41] Felton Dec. at Exhibit A (App. 323); *see also* Rosa Dep. at 10-11 (App. 214-15); Rosa Dec. at Exhibit A (App. 326); Deposition of Najarro ("Najarro Dep.") at 22-25 (App.239-42).
[42] Najarro Dep. at 17, 26-27 (App.238, 243-44).

failure to respond to the pages two days earlier, Herrera and co-worker Iris Torres went to see Vice President Joanne Cheshire.[43]  Cheshire took detailed notes of her January 11, 2008 meeting with Herrera and Torres.[44]  Cheshire's notes reflect that Herrera and Torres complained about being written up for failing to respond to Macedo's page, alleging that they could not hear it.[45] Herrera identified co-worker Martha Conard as an employee working next to her at the time of the pages who could corroborate her account.[46]  Herrera also complained generally about favoritism by Macedo, stating that she always picked her friends for early lunches and breaks and to handle jobs off of the pick line.[47]

Cheshire acted immediately on Herrera's complaint, instructing General Manager Rick Felton and Rosa to investigate whether the paging system was sufficiently audible and also whether Macedo was improperly favoring some line employees over others.[48]  Rosa confirmed with at least ten different employees in Herrera's vicinity that the page was heard.[49]  Martha Conard, the witness Herrera identified to vouch for her, told Rosa that she was nearby Herrera when one of the pages was made.[50]  Conard informed Rosa that Herrera heard the page, stated she was not going, and then asked Conard to lie for her and not to tell the others where she was.[51]

As requested by Cheshire, employees were also asked about any problems on the line, such as favoritism.  While some employees agreed that Macedo played favorites, others offered their opinions that one of the primary problems on the line was Herrera, labeling her a bully and an instigator of many interpersonal problems on the line.  For example, several employees

---

[43] Declaration of Joann Cheshire ("Cheshire Dec.") at ¶ 5 (App. 344-45).
[44] Cheshire Dec. at ¶ 6 (App. 345); Cheshire Dec at Exhibit at Exhibit C(App.351).
[45] Cheshire Dec. at ¶ 6 (App. 345).
[46] *Id.*
[47] Cheshire Dec. at ¶ 7 (App. 351).
[48] *Id.*
[49] Rosa Dep. at 30 (App. 220).
[50] *Id.*; Rosa Dec at Exhibit A (App. 328).
[51] Rosa Dep. at 30-31 (App. 220-21) Rosa. Dec. at Exhibit A (App. 328).

reported that Herrera regularly used vulgar language, mocked, and intimidated her co-workers.[52] Employee Sharon Alonso added that Herrera had disrupted the assembly line by pulling the emergency stop without proper reason on January 15, 2008.[53]

Based on the information obtained in these concurrent investigations, Herrera's past disciplinary infractions, and Herrera's history of "interpersonal" issues, Mary Kay terminated Herrera's employment on January 21, 2008.[54]   The decision to terminate Herrera's employment was made by Rick Felton and Joanne Cheshire.[55]   Felton and Cheshire based their decision to terminate Herrera on the fact that after receiving a Final Written Warning, it was determined that Herrera had again disrupted the workplace by making violent threats against fellow employees.[56] Neither Villalobos nor Macedo were involved in the decision to terminate Plaintiff's employment.[57]

### B.     Herrera's Complaints Against Eduardo Villalobos.

Herrera claims in her lawsuit that she had numerous encounters with Villalobos in which he engaged in conduct or made statements that were sexually offensive.[58]   During much of the relevant time period, Villalobos worked as the Line Starter, at the head of the assembly line where boxes moved down a conveyor belt to be filled with the Mary Kay products that had been ordered by Mary Kay Independent Beauty Consultants.[59]   Herrera usually worked at another "zone" further down that same line.

Herrera alleges that Villalobos had supervisory responsibilities over her and the other line

---

[52] Rosa Dep. at 14 (App. 216).
[53] Rosa Dep. at 14-15 (App. 216-17).
[54] Felton Dec. at Exhibit A (App. 323).
[55] Felton Dec. at ¶ 3 (App. 320).
[56] *Id*.
[57] *Id*.
[58] Herrera Dep. at 88-89 (App. 23-24); Complaint at 4, ¶ 5.
[59] *See* Villalobos Dep. at 18 (App. 230).

workers, including the ability to assign her a daily spot on the assembly line before each shift.[60]

Herrera also alleges for the first time in her Second Amended Complaint, filed over one year after her termination, various statements and conduct which she attributes to Villalobos allegedly occurring between June 2007 and January 2008.[61]

Herrera also claims Villalobos on more than one occasion used inappropriate language in the workplace.[62]   Specifically, Herrera claims that Villalobos used to call her "*hija de la gran puta*" (daughter of a grand whore), and "*cerota*" (piece of shit).[63]

Herrera alleges to have overheard Villalobos make homosexual insults to co-worker Benjamin Zimmer, such as "*maricon*" and "*joto*."[64]   Zimmer admits that he never reported these insults to management.[65]

## C.    Herrera's Complaints Against Ana Macedo.

Macedo is a Line Coordinator at the Southwest facility, and her principal duties were to operate quality control systems and to implement the decisions of the Supervisor regarding employee assignments on the Line.[66]   Plaintiff never mentioned Macedo in her EEOC Charge.[67] However, in her Second Amended Complaint, Herrera complains about alleged harassment by Macedo.[68]   Herrera alleges that Macedo, like Villalobos, had supervisory authority over her and the other line workers, in that she was able to assign the line workers to specific zones or move

---

[60] Herrera Dep. at 82 (App. 22); Complaint at 21, ¶ 3.
[61] Herrera admits that the allegations in her Complaint are "a good list and a complete list" of Villalobos allegedly harassing conduct.  *See* Herrera Dep. at 202-03 (App. 50).  At her deposition, Herrera claimed also to have seen Villalobos reading a pornographic magazine, but admitted that she never reported this.  Herrera Dep. at 42-43 (App. 12); *see generally* Complaint at 5-10, ¶¶ 7-24.
[62] *See* Herrera Dep. at 53-52 (App. 14-15).
[63] Villalobos denies calling Herrera those names.  *See* Villalobos Dep. at 20 (App. 231); Herrera Dep. at 53 (App. 15); Complaint at 5, ¶ 8.
[64] Herrera Dep. at 188-89 (App. 46-47); Complaint at 10-11, ¶ 26.  Herrera also alleges that she observed Villalobos "sticking his tongue in the ear of Norma Cazares ("Cazares"), while touching her rear end."  Complaint at 11, ¶ 27).
[65] Deposition of Benjamin Zimmer ("Zimmer Dep") at 23 (App. 253).
[66] Macedo Dep. At 8-9 (App. 203-04).
[67] Herrera's EEOC Charge of Discrimination (App. 201).
[68] *See* Complaint at pg. 12-13, ¶¶ 29-34.

the workers from one zone to another during a shift.[69]

Herrera claims to have observed Macedo engaged in provocative homosexual acts and flirtations with other female employees, and alleges that Macedo gave preferential treatment in zone assignments to female co-workers who acquiesced to her advances.[70]   Herrera identifies only one occasion where Macedo made a statement to her directly:

> Q.  By the way, did Ana [Macedo] ever ask you to do things sexually?
>
> A.  Yes, sir.
>
> Q.  When did – when did she do that?
>
> A.  She told me *one time* in between 2005, 2006 – no, I'm sorry, 2006, 2007, she came to me and she say, "Lupe," she say, "you know you look very good, but you know what, if I will have something to do with you sexually, you will go and tell Gale [Touchstone, the supervisor] because you tell everything you hear on the line."[71]

Herrera also claims that Macedo threatened that she would be "punished" for failing to acquiesce to her sexual advances.[72]

### D.      Herrera's Reporting of the Alleged Wrongful Behavior.

At the times material to the allegations in her lawsuit, Herrera's supervisors were Gale Touchstone ("Touchstone") and Craig Williams.[73]   Shortly after she started to work at Mary Kay, on May 26, 1999, Herrera received the company's Employee Handbook (the "Handbook") which contains Mary Kay's Harassment Prevention Policy.[74]   Herrera also received Harassment

---

[69] Herrera Dep. at 67-68 (App. 18).
[70] Complaint at 12, ¶ 30.
[71] Herrera Dep. at 105 (emphasis added) (App. 28).  Herrera does not include anything about this allegation in her Complaint, a fact that she acknowledged during her deposition.  Herrera Dep. at 114-15 (App. 30).
[72] *Id.*
[73] Herrera Dep. at 80 (App. 21).
[74] Herrera Dep. at 32-33 (App. 9-10).  Mary Kay issued a revised Employee Handbook in January 2004. Herrera acknowledged receiving the revised handbook on February 17, 2004.  Herrera Dep. at 34 (App. 10); *see also* Johnson Dec. (App. 363-66).

Prevention Training and policy updates during her tenure with the Company.[75]   Herrera acknowledged receiving the Harassment Prevention Policy on March 26, 2002 and indicated that she understood it.[76]

In her deposition, Herrera explained her understanding of the reporting policy:

> Q.   What was your understanding about what an employee at Mary Kay is supposed to do when she sees, you know, a violation of this policy?
>
> A.    I understand that if you see something that is very inappropriate and it's – you don't feel comfortable, you should go and report it to your supervisor.
>
> Q.   All right.   And if – is there anyone else you can report something like that to besides the supervisor?
>
> A.   When I was hired, they told me that first I have to go to my supervisor.
>
> Q.  Okay.
>
> A.   And then if my supervisor doesn't do anything, I'm supposed to go to human resources.
>
> Q.  All right.
>
> A.   And if human resources doesn't do anything, you're supposed to go to someone else higher than human resources.[77]

As summarized by Herrera, the Mary Kay Employee Handbook stated the harassment reporting policy thusly:

> Any violation of this Harassment Prevention policy must be reported immediately.  Any employee who feels that he, she or a co-worker is a victim of a violation of this policy is urged to contact a supervisor or a Human Resources generalist, manager, director or vice president.  If a violation involves the immediate supervisor, contact a Human Resources generalist, manager, director or vice president.  All supervisory employees must immediately communicate any reports of alleged violations of this policy or incidents of potential violations of this policy to Human

---

[75] Johnson Dec. (App. 363).
[76] Herrera Dep. at 34 (App. 10)
[77] Herrera Dep. at 43-44 (App. 12).

**DEFENDANT MARY KAY INC.'S BRIEF IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT – Page 13**

Resources.  If you do not believe the person notified has taken action, you should notify a senior vice president of Human Resources or the General Counsel of the Company.[78]

## 1.    Herrera's General Harassment Allegations.

It is undisputed that Herrera took advantage of the ability to make complaints to her supervisor about a number of issues.  Specifically, Herrera came to Touchstone with general complaints about the working situation on the assembly line, including complaints about favoritism and Herrera's perception that other employees would not assist her when she needed help.[79]  Touchstone says that these complaints, however, were never of conduct of a sexual nature, but were complaints only about the conditions on the assembly line that Herrera perceived as unfair.[80]  Inquiries were made as a result of these complaints and action taken where warranted.[81]

Likewise, Human Resources Generalist Rosa also recalls fielding complaints from Herrera generally about others on the line, but never any complaints concerning sexual harassment or sexually inappropriate behavior directed at Herrera by any of her coworkers or supervisors.[82]

Q.  Did Lupe ever come to you and complain about any other employees harassing her during 2007 and 2008?

A.  Lupe did not come to me to complain about harassment.

Q.  Are you aware of her complaining to any employees of Mary Kay about her being harassed during 2007 or 2008?

A.  No.

Q.  I'll state it another way.  As [sic] you are aware of Lupe Herrera

---

[78] Herrera Dep. at Exhibit 7 (App. 90); *see also* Herrera Dep. at 43-45 (App. 12)
[79] Touchstone Dec. at ¶¶ 8-9 (App. 333-34)
[80] *Id.*
[81] Touchstone Dec. at ¶ 9 (App. 334)
[82] Rosa Dec. at ¶ 3 (App. 324)

making any complaints about being sexually harassed by Eduardo Villalobos during 2007 or 2008?

       A.  I learned about that when I she filed the complaint.

       Q.   And that's the first you heard of a complaint was after she was terminated?

       A.  Of a sexual harassment complaint.

       Q.  Sexual harassment complaint?

       A.  Correct.
      .

The only complaint of harassment by Herrera of which Rosa ever became aware involved the complaint that was shared with Vice President Steve Morton in 2006.[83]

### 2.     Mary Kay Investigates Herrera's Complaints of May 2006.

As mentioned above, on May 5, 2006, Herrera met with Mary Kay Vice President Steve Morton ("Morton").  During this meeting, along with more general complaints about favoritism, Herrera described conduct that warranted an investigation into potential violations of the Company's Harassment Prevention Policy, including complaints that she was being touched inappropriately by Villalobos and that Macedo might be making sexual advances towards other female employees.[84]  Following his meeting with Herrera, Morton brought Herrera's complaint to the attention of Susan Chaffin ("Chaffin"), a Director in Mary Kay's Corporate Human Resources department, and asked her to investigate Herrera's allegations directly.[85]

Chaffin met with Herrera to investigate her complaints on May 10, 2006.[86]  During the meeting with Chaffin, Herrera described a conspiracy between Macedo and a temporary worker

---

[83] Rosa Dep at 25-26 (App. 218-19); Rosa Dec. at ¶ 5 (App. 324).  While Rosa was informed of this complaint, (*see* Section V.D.2. below), Herrera did not approach directly about this issue.  Rosa Dep. at 26 (App. 219).

[84] Deposition of Susan Chaffin ("Chaffin Dep.") at Exhibit 2 (App. 279)

[85] *Id.*

[86] Chaffin Dep. at Exhibit 1 (App. 273)

named Tamara to have Herrera suspended from work by "falsely accus[ing]" Herrera of "urging Tamara to report that she had been sexually harassed by Macedo."[87]  Regarding Macedo, Herrera claimed that "she liked girls" and that she was "meeting with people in the bathroom or hugging at [Macedo's] desk."[88]

According to Chaffin's notes, Herrera also alleged that she had regularly seen Villalobos and Order Filler Norma Cazares consensually "kissing;" and that Macedo and a temporary worker named Victoria, whom Herrera claimed was Macedo's girlfriend, would regularly hug each other.[89]  Herrera claimed to have told Rosa "a couple of months ago about [Villalobos] kissing on the line," but stated that her supervisor, Touchstone, had indicated that if the kissing between Villalobos and Cazares was consensual then "it was not a problem."[90]

Significantly, Herrera did not renew with Chaffin her claim that Villalobos had sexually harassed *her*, as opposed to other employees.  Instead, with respect to kissing and other inappropriate contact, Chaffin noted that Herrera told her that "[i]t was not done to Lupe, but to others."[91]  At her deposition, Herrera acknowledged that that she did not tell Chaffin about all the harassment that she now alleges was happening at the time, even though she knew that she was free to reveal all such information, claiming that for some reason she was "scared" to do so:

> Q.   Do you remember when you – the one time that you did meet with Ms. Chaffin that you talked about earlier, do you remember how long you were there talking to her?
>
> A.   I don't remember if it was for an hour, an hour and a half.  I don't know for sure, sir.
>
> Q.   Pretty long meeting?
>
> A.   Yes, sir.

---

[87] *Id.*
[88] Chaffin Dep. at 30 (App. 259).
[89] Chaffin Dep. at Exhibit 2 (App. 273-74).
[90] *Id.* (App.274).
[91] *Id.*

Q.   Did you feel like you had a chance to tell her whatever you wanted to tell her about what was going on at Southwest?

A.   Yes, but I was a little bit scared.

Q.   But did you feel more comfortable with Ms. Chaffin than you did with Mary Lou Rosa?

A.   Yes, sir.

Q.   Did you get the feeling that there would be any problem with you telling anything to Ms. Chaffin?

A.   No, she told me it was going to be confidential.

Q.   . . . Do you have -- are you saying that anything that you told to Ms. Chaffin was not kept confidential the way that she told you it would be?

A.   I don't know, sir.

Q.   Okay.  Do you feel that you told Ms. Chaffin everything that was going on on the line that was a problem with you during that meeting?

A.   No, sir, I didn't tell her everything.

Q.   Why did you not tell her everything?

A.   Because I was -- I was a little scared that she would go to Mary Lou and I was going to get in more problems.

Q.   Okay.  What did you not tell her?

A.   I didn't tell her when Eduardo touched me, when Eduardo came and talked to me sexually harassment, I didn't tell her when he would come behind me and try to grab me, I didn't tell her when he grabbed my hand and put them on his mouth.

Q.   Why didn't you tell her that?

A.   Because I was very scared that probably Mary Lou was going to convince her that I was lying.

Q.   Well, why didn't -- why did you tell Mr. Morton a couple of those things -- you did tell Mr. Morton a couple of those things, right?

A.   Yes, sir, I did tell Mr. Morton when he came and grabbed my hand and touched me.

Q.   But why didn't you tell Ms. Chaffin that?

A.  I felt telling Mr. Steve Morton, he was more – I feel more comfortable with him because – I don't know.  I was just –

Q.  Didn't you realize that that was your time to try to get something done about Eduardo and what he was doing to you?

A.  Yes, sir, but I was scared at the time.[92]

Chaffin continued her investigation from May 22 to May 31, 2006, interviewing co-workers whom Herrera had suggested could corroborate her allegations, including Iris Torres, Gabriela Olivas and Sharon Alonso.[93]  None of these witnesses identified any evidence of a sexually hostile work environment.[94]

Based on her investigation, Chaffin concluded that "there was no sexual harassment going on at Southwest."[95]  She shared her findings with Mary Kay management, and the persons in charge at Southwest, including Rick Felton, Touchstone, and Rosa.[96]  Finally, on June 14, 2006, Chaffin discussed her findings with Herrera:

I let her know that I had addressed her concerns in what I felt was an appropriate way.  I told her that she had to be part of the solution as well.  She needed to be a positive part of the team.  She said that she was feeling good about things and hoped they would get better.[97]

Chaffin's investigation uncovered no evidence to substantiate Herrera's claims of sexual harassment against Macedo.[98]  Chaffin was further unable to uncover any evidence of favoritism,

---

[92] Herrera Dep. at 177-179 (App. 44).
[93] Chaffin Dep. at 51 (App. 265).
[94] Chaffin Dep. at Exhibit 1 (App. 277-78).  As noted by Chaffin, Torres claimed to have witnessed consensual "hugging and kissing" between two employees.  *Id.* (App. 275).  Olivas described problems with workplace cohesiveness but nothing of a sexual harassing nature. Chaffin Dep. at 33, 62-64 (App. 260, 267-69). Alonso was unaware of any inappropriate sexual behavior although she claimed to have seen Macedo and a female employee close together in a bathroom on one occasion; in her deposition, however, Alonso clarified that she had witnessed Macedo in the bathroom assisting another worker fix her contact lenses.  Deposition of Alonso at 12 (App. 296).
[95] Chaffin Dep. at Exhibit 1 (App. 278).
[96] Chaffin Dep. at 47 (App. 264).
[97] Chaffin Dep. at Exhibit 1 (App. 278).
[98] Chaffin Dep. at 42-43 (App. 261-63).

as alleged by Herrera.[99]  Villalobos and Cazares were counseled, however, regarding the need for them to avoid further unprofessional expressions of affection with coworkers on the line.[100] Macedo was likewise counseled as a result of the Chaffin investigation.[101]

In her deposition, Herrera testified that the situation on the line "got worse" after Chaffin concluded her investigation, but admitted that she did not return to Morton at any time to report the alleged deterioration of conditions.[102]  Nor did she ever report any alleged harassment to the company's General Counsel or the Senior Vice President of Human Resources, as directed by Mary Kay's Harassment Prevention Policy.

### 3.      Herrera Accuses Villalobos and Macedo of Theft.

In 2007, Herrera contacted Candie Rodriguez ("Rodriguez"), Mary Kay's Human Resources Manager.[103]  In her meeting with Rodriguez, Herrera accused Villalobos and Macedo of stealing Mary Kay property.[104]  Herrera never mentioned any complaints about sexual harassment to Rodriguez.[105]  Herrera's accusations were investigated by Rodriguez, Felton, and Mary Kay Vice President Joanne Cheshire ("Cheshire"), together with the company's Protective Services group, and ultimately determined to be without merit.[106]

### 4.      Herrera Allegedly Reports Harassment to Cheshire.

In her Complaint and in her deposition, Herrera alleges that Villalobos threatened her (not the other way around) on the floor of the Southwest Facility on January 9, 2008, in the minutes after she had begun to assist with the project for which Macedo had paged her.

---

[99] Chaffin Dep. at 44 (App. 263).
[100] Rosa Dec. at Exhibit A (App. 331).
[101] *Id.*
[102] Herrera Dep. at 179-181 (App. 44-45).
[103] Deposition of Rodriguez ("Rodriguez Dep.") at 10 (App. 306).
[104] Rodriguez Dep. at 10-11 (App. 306-07).
[105] Rodriguez Dep. at 13 (App. 308).
[106] Cheshire Dec. at ¶ 2-3 (App. 344); *id.* at Exhibit B (App. 349) *see also* Deposition of Rick Felton ("Felton Dep.") at 11-13 (App. 300-02).

Specifically, she claims Villalobos shouted at her that "[i]f you have a fucking problem, tell me in front of my fucking face."[107]   Herrera claims she reported this comment to her supervisor, Craig Williams, who allegedly responded "Lupe, you don't understand.  I don't have time.  I'm sorry.  I don't have time.  I don't have time."  *Id.*

As discussed *supra*, Herrera and Torres went to see Cheshire on January 11, 2008.  In her deposition, Herrera alleged that she told Cheshire that after the paging incident, Villalobos had yelled so close to her face that he had felt his saliva on her face.  She testified that Cheshire promised her that she would "do something about it.  I'm going to get with Mary Lou and do an investigation."[108]

Cheshire took detailed notes of her January 11, 2008 meeting with Herrera and Torres.[109]  The notes do not reflect that Herrera reported any threatening conduct or statements by Villalobos.[110]   Instead, as discussed *supra*, Cheshire's notes reflect that Herrera and Torres complained about being written up for failing to respond to Macedo's page and about favoritism by Macedo.[111]  The resulting investigations initiated by Cheshire determined that Herrera had not only heard the pages but had asked a co-worker to lie for her and that Herrera was the primary instigator on the line.

While Cheshire's notes do not support Herrera's allegation that she reported Villalobos' verbal harassment ("if you have a problem," etc.) to Cheshire, Mary Kay's records do reflect that Rosa learned of such an incident and investigated it.  After speaking with several employees whom Herrera alleged had witnessed the incident, as well as others not suggested by Herrera, Rosa summarized her conclusions regarding this allegation as follows:

---

[107] Herrera Dep. at 244-245 (App. 60-61); *see also* Complaint at 5-6, ¶ 9.
[108] Herrera Dep. at 254 (App. 63).
[109] Cheshire Dec. at ¶ 6 (App.345); *id.* at Exhibit C (App. 351).
[110] *Id.* at  (App. 351).
[111] *Id.*

In the situation of the alleged confrontation between Eduardo and Lupe.  Lupe stated that Eduardo got in her face and screamed at her.  The feedback received from employees there was that neither Iris or Lupe was happy that they were called in [for failing to respond to the page] and were upset, that Eduardo told them to just do what they needed to do, there was agreement of existing friction between them but that at no point did Eduardo got [sic] close to Lupe because she was on the other side of the conveyor and there was no way for him to have done that.[112]

# VI.
# ARGUMENT AND AUTHORITIES

### A.    Herrera's Sexual Harassment Claims Fail as a Matter of Law.

In evaluating a claim of sexual harassment under Title VII, courts must first determine whether the complaining employee has suffered a "tangible employment action."[113]  If she has suffered a tangible employment action because of her acceptance or rejection of a supervisor's sexual advances, her suit is classified as a *quid pro quo* case; if she has not, her suit is classified as a "hostile environment" case.[114]  The distinction between the two types of cases is that the affirmative defense set forth by the Supreme Court in *Burlington Industries v. Ellerth*[115] and *Faragher v. City of Boca Raton*[116] is available only in a hostile work environment case.  Plaintiff asserts both causes of action here based on the alleged conduct of both Macedo and Villalobos.

---

[112] Rosa Dec. at Exhibit A (App.328-29)

[113] *Williams v. Barnhill's Buffet, Inc.*, 290 Fed. Appx. 759, 761 (5th Cir. 2008) (citing *Casiano v. AT&T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000)).

[114] *La Day v. Catalyst Tech, Inc.,* 302 F.3d 474, 481 (5th Cir. 2002).

[115] 524 U.S. 742 (1998).

[116] 524 U.S. 775 (1998)

1.      **Herrera Cannot Prove a Prima Facie Case of *Quid Pro Quo* Harassment
With Respect to Either Macedo or Villalobos, Because Neither Macedo nor
Villalobos Effected any Tangible Employment Actions Against Herrera.**

*Quid pro quo* harassment requires more than the mere existence of an employment
relationship that "aids in the commission of the harassment."[117]   Rather, it takes place when a
supervisor takes a tangible employment action against a subordinate because of her acceptance
or rejection of the supervisor's alleged sexual advances.[118]

Plaintiff alleges only two specific adverse employment actions allegedly taken against
her:  (1) her termination, and (2) her assignment to "heavy zones."   Plaintiff alleges that both
Macedo and Villalobos indicated that by providing them with sexual favors, she could avoid
assignment to "heavy zones."[119]   In investigating Plaintiff's claims, the Company found that
even those individuals Plaintiff alleged were Macedo's favorites were also assigned to heavy
zones.   Regardless, however, assignment to a heavy zone is simply not a tangible employment
action for purposes of a *quid pro quo* claim.   A Mary Kay worker's zone assignment has no
bearing on that employee's pay, benefits, or shift length.[120]   Recently, in *Williams v. Barnhill's
Buffet Inc.*,[121] the Fifth Circuit held that assigning an employee to bad sections of a work area or
to additional duties in line with her position did not constitute tangible employment action.[122]   In
*Barnhill*, the plaintiff waitress attempted to rely on assignment to the "bad" sections of a
restaurant and requiring her to wash the wall where waiters dumped food as tangible

---

[117] *Ellerth*, 524 U.S. at 760.
[118] *Id.; La Day,* 302 F.3d at 481.  For purposes of this motion for summary judgment, Defendant concedes
that Villalobos and Macedo were Plaintiff's supervisors, but does not waive the right to argue at trial that they were
not.
[119] Plaintiff admits, however, that she was one of the best performers on the line and that she has no
evidence to rebut Mary Kay's assertion that the reason she was placed in the heavy zones was her efficiency and
good performance in those zones.
[120] Herrera Dep. at 82-83 (App. 22); Touchstone Dec. at ¶ 4 (App. 332).
[121] 290 Fed. Appx. 759 (5th Cir. 2008).
[122] *Id.* at 761-62 (citing *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999)).

employment actions.[123] Plaintiff's allegations regarding the "heavy zones" are exactly analogous to the allegations in *Barnhill*.  They simply do not rise to the level of "a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" required to demonstrate a tangible employment action.[124]   There is similarly no evidence that Herrera's occasional assignment to these heavy zones negatively impacted her reviews; in fact, her performance resulted in excellent ratings for her technical skills.[125]   Accordingly, Plaintiff's *quid pro quo* claim based on her assignment to "heavy zones" fails as a matter of law.

Even if termination is considered the tangible employment action, it is undisputed that neither Villalobos nor Macedo were decision-makers in the decision to terminate Plaintiff's employment.[126]   That decision was made by Rick Felton and Joann Cheshire, and Plaintiff has not even alleged that the decision to terminate her was motivated by her acceptance or rejection of sexual advances by anyone at the Company.  Accordingly, Plaintiff cannot establish a *quid pro quo* claim with respect to the termination of her employment.

In the absence of a tangible employment action taken by a supervisor because of her acceptance or rejection of sexual advances, Plaintiff's *quid pro quo* claim fails as a matter of law.

---

[123] *Id.* at 761.
[124] *Id.* at 762 (citing *Ellerth*, 524 U.S. at 761).
[125] Johnson Dec. (App. 369, 372, 374, 375, 380, 383).
[126] Cheshire Dec. at ¶ 4. (App332); Felton Dec. at ¶ 3 (App.320).

2.      **Herrera Cannot Prove a Hostile Work Environment Claim.**

a.      **Herrera's Hostile Work Environment Claim as to Macedo is Barred for Failure to Exhaust Administrative Prerequisites.**

Plaintiff never mentioned Macedo in her EEOC Charge.[127]  The Charge itself simply alleges that Plaintiff was "sexually harassed over a two year period by a fellow employee."[128] Further, when Plaintiff provided more detailed information to the EEOC, she specified only Eduardo Villalobos by name,[129] leaving no reason for Defendant or the EEOC to investigate any claims regarding any other supervisor, including Macedo.  It is well-established law in the Fifth Circuit that after exhausting administrative remedies, a plaintiff's civil action may be based only on claims that could reasonably be expected to grow out of the initial charges of discrimination.[130] Failing to assert a claim in the EEOC charge precludes a plaintiff from including that claim in a later civil suit.[131]  For example, if a complaint alleges retaliation that allegedly occurred before plaintiff filed the initial EEOC charge, the retaliation does not grow out of the previous EEOC charge, and administrative remedies must be separately exhausted as to that claim—the charge must include that particular claim of retaliation.[132]  Plaintiff's failure to mention Macedo in the Charge or in the information she provided to the EEOC is a failure to exhaust her administrative remedies as to harassment by Macedo; accordingly, those claims fail as a matter of law.

---

[127] (App. 201).

[128] *Id.*.

[129] Herera Dep. at Exhibit 27 (App. 173-74).

[130] *Estate of Martineau v. ARCO Chem. Co.*, 203 F.3d 904, 913 (5th Cir. 2000).

[131] *National Assn of Gov't Employees v. City of San Antonio*, 40 F.3d 698, 711-12 (5th Cir. 1994); *Williams v. Simmons Co.*, 185 F. Supp.2d 665, 681 (N.D. Tex. 2001).

[132] *See Gupta v. East Texas State Univ.*, 654 F.2d 411, 414 (5th Cir. 1981); *McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 295 (E.D. Tex. 1996).

### b.   Herrera's Hostile Work Environment Claim as to Macedo is Time-Barred.

Under Title VII, where a state administrative mechanism addresses employment complaints, as in Texas, a plaintiff must file her charge of discrimination within 300 days of the date of the alleged discriminatory conduct.[133]  Congress intended the limitations period contained in section 2000e-5(e)(1) to serve as a statute of limitations.[134]  With respect to claims of hostile work environment, Plaintiff can escape the 300-day limitation if she can demonstrate at least one act that is part of the hostile work environment that took place within the 300-day period.[135] Since Plaintiff was terminated on January 21, 2008, Plaintiff must allege at least one act by Macedo that took place within the 300 days before that date, or after May 24, 2007.

Plaintiff alleges that Macedo made sexual advances toward her and other women on the line.  She testified that Macedo indicated sexual interest in her "one time, in between 2005, 2006 – no, I'm sorry, 2006, 2007."[136]  In order to take advantage of a "continuing violation" theory with respect to Macedo, Plaintiff must provide specific evidence of misconduct by Macedo that took place during the 300-day period.  This she has failed to do.

Further, the "2006, 2007" conduct allegedly consisted of the following statement allegedly made by Macedo:  "Lupe…you know you look very good, but you know what, if I will have something to do with you sexually, you will go and tell Gayle [Touchstone, the supervisor] because you tell everything you hear on the line."[137]  This conduct is significantly different from the other allegations Plaintiff made about Macedo, which related to Macedo's interaction with *other women* on the line (none of which was even allegedly nonconsensual).  Such evidence is

---

[133]  42 U.S.C. 2000e-5(e)(1); *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998); *Webb v. Cardiothoracic Surgery Assocs. of North Texas*, 139 F.3d 532, 538 (5th Cir. 1998)..
[134] *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393-94 (1982).
[135] *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002).
[136] Herrera Dep. at 105 (App. 28).
[137] *Id.*

not relevant for purposes of summary judgment.[138]  In *Septimus v. University of Houston*,[139] the plaintiff attempted to rely on acts the allegedly offending supervisor took toward other women in the department; the Fifth Circuit determined that this evidence was not relevant to plaintiff's sexual harassment claim and affirmed the district court's summary judgment decision.

> c.    **Herrera Cannot Demonstrate That Macedo's or Villalobos' Alleged Actions Were Severe and Pervasive Enough to Alter the Terms and Conditions of Her Employment.**

Even if the Court determines Plaintiff's harassment claim against Macedo is not barred, Plaintiff still must demonstrate actionable sexual harassment by proving she was subjected to unwelcome harassing conduct "sufficiently severe or pervasive to alter the conditions of her employment."[140]  Such conduct must create "a sexually objectionable environment [that is] both objectively and subjectively offensive, one that a ***reasonable person*** would find hostile or abusive, and one that the victim in fact did perceive to be so."[141]  The objectionable conduct must affect the "conditions" of the alleged victim's employment.[142]  Merely offensive conduct is not actionable.[143]

Plaintiff bears the burden of showing that the alleged harassment was objectively and subjectively severe and pervasive.[144]  Conduct must be "extreme" before it will create an objective change in the terms and conditions of employment so as to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive

---

[138] *Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. 2005)

[139] *Id.*

[140] *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).

[141] *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citations omitted) (emphasis added); *see also Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998).

[142] *Oncale v. Sundowner Offshore Svcs., Inc.*, 523 U.S. 75, 81 (1998).

[143] *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

[144] *See Ellerth*, 524 U.S. at 754.  For purposes of this summary judgment motion only, Defendant concedes that Plaintiff was subjectively offended by the conduct she alleges.  Defendant does not waive the right to argue at a later point that Plaintiff was not subjectively offended.

language, gender-related jokes, and occasional teasing."[145]  The conduct must be "so egregious as to alter the conditions of employment and destroy [the alleged victim's] equal opportunity in the workplace."[146]  Incidental, occasional or merely playful sexual utterances will rarely poison the employee's working conditions to the extent demanded for liability.[147]  The standard is a demanding one—any lesser standard of liability, couched in terms of conduct that sporadically wounds or offends but does not hinder a female employee's performance, would not serve the goal of equality.[148]  Indeed, "[a]ll of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment….The extreme facts in those cases highlight the intensity of the objectionable conduct and must be present in order to constitute an actionable hostile environment claim."[149]

Courts evaluating the severe or pervasive standard routinely find far more egregious conduct than that alleged by Plaintiff, and even overtly sexual behavior toward the employee, is not actionable.  The Fifth Circuit has determined that inappropriate comments, including "your elbows are the same color as your nipples," and touching, including rubbing hands down the plaintiff's arm from her shoulder to her wrist, which occurred over the course of two years, were "boorish and offensive" but were not objectively severe or pervasive enough to constitute actionable sexual harassment.[150]  Similarly, district courts in this circuit have found the following did not rise to the level of a actionable sexual harassment:

---

[145] *Faragher*, 524 U.S. at 788 (quotations and citations omitted); *see also Caro v. City of Dallas*, 17 F. Supp. 2d 618, 628 (N.D. Tex. 1998).

[146] *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir.), *cert. denied*, 516 U.S. 974 (1995).

[147] *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999).

[148] *Id.; DeAngelis*, 51 F.3d at 593.

[149] *Indest*, 164 F.3d at 264 (citations omitted).

[150] *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir.), *cert. denied*, 528 U.S. 963 (1999).

- verbal comments regarding the plaintiff's body, "brushings" against plaintiff's body, a "butt whack," and "attempted kiss (and attendant grab of Plaintiff's breast)";[151]

- statements by supervisor including "You know, if I stick [my penis] in you, you'll say computer right," "Ooh, girl, I could stick this long [expletive deleted] in you and you ... go tell your husband that you'll leave him for a white man," along with touching plaintiff's buttocks and remarking that "[it] must be jelly because jam [does not] shake like that" and grabbing his crotch and looking at her;[152]

- telling her how good she smells, hugging her tightly, squeezing breasts to his chest, and kissing her on her face and neck;[153]

- remarks to the plaintiff about her breasts and buttocks and commenting that she was having a sexual relationship with her supervisor;[154]

- frequent inquiries regarding the color of her toenails, whether the plaintiff was a "real" blonde, and whether she was dating someone;[155]

- inappropriate comments by supervisors such as statements that one gets a promotion if one sleeps with the boss, discussions about what kind of panty hose the employee should wear, comments about how to achieve "perky breasts" by taking a cold shower, touching her hair, kicking her in the buttocks, talking about skirt lengths of the employee and touching her breast.[156]

As these cases demonstrate, the conduct alleged by Plaintiff was not, under any interpretation, objectively severe or pervasive as this Circuit has defined that standard.

### (1)   Macedo's Alleged Conduct Was Not Severe and Pervasive.

Plaintiff's claim of sexual harassment against Macedo fails because the conduct Plaintiff attributes to Macedo was neither severe nor pervasive.  Plaintiff alleges only one action by

---

[151] *Hockman v. Westward Communications, L.L.C.*, 282 F. Supp. 2d 512, 520 (E.D. Tex. 2003).
[152] *Jones v. Seago Manor Nursing Home*, No. 3:01-CV-2406-AH,  2002 U.S. Dist. LEXIS 17135 at *3-4 (N.D. Tex. Sept. 11, 2002).
[153] *Ingram v. City of Farmers Branch, Tex.*, No. 3:00-CV-0560-G, 2001 U.S. Dist. LEXIS at *2 (N.D. Tex. June 25, 2001).
[154] *Mernik v. Classic Cars, Inc.*, No. 3:99-CV-1327-P, 2000 U.S. Dist. LEXIS at *32-33 (N.D. Tex. June 28, 2000)
[155] *Varela v. National Reinsurance Corp.*, No. CA3:97- CV-2088-BC, 1998 U.S. Dist. LEXIS at *3-4 (N.D. Tex. Mar. 5, 1998) ("although boorish and rude," this was "simply not the type of conduct that is severe enough or offensive enough to give rise to an actionable offense").
[156] *Gearhart v. Eye Care Ctrs. of America, Inc.*, 888 F. Supp. 814, 824-825 (S.D. Tex. 1995).

Macedo against her. All of the other actions she alleges related to Macedo's alleged conduct with respect to other women. Such evidence is not relevant for purposes of summary judgment.[157] Certainly, Macedo's statement was not so "severe" that it created a hostile work environment for Plaintiff. Rather, construed in the light most favorable to Plaintiff, the comment falls into the category of ordinary workplace tribulations.[158] In addition, the alleged action taken by Macedo was not so repetitive and widespread to be "pervasive" as contemplated by Title VII. Offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment.[159] Plaintiff has no evidence of objectively severe or pervasive conduct by Macedo affecting the terms and conditions of her employment.

### (2) Villalobos' Alleged Conduct Was Not Severe and Pervasive.

Similarly, Plaintiff alleges that Villalobos made several remarks to her that had sexual content, including an expressed sexual interest in her. Putting aside her allegations about Villalobos' conduct with other women, Herrera alleges that Villalobos touched *her* only twice: once by putting her fingers in his mouth and once by pressing his groin against her back. These allegations are akin to those in *Shepherd v. Comptroller of Pub. Accounts*.[160] In that case, the plaintiff alleged that over a two-year period, her alleged harasser stood in front of her desk and remarked "your elbows are the same color as your nipples" and that she had "big thighs" while he simulated looking under her dress.[161] She further claimed that he stood over her desk on several occasions and attempted to look down her clothing, as well as touching her arm on

---

[157] *Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. 2005).

[158] *Faragher*, 524 U.S. at 788.

[159] *Indest*, 164 F.3d at 264 (citations omitted); *see also Septimus*, 399 F.3d at 612 (three "boorish and offensive" incidents of conduct directed towards Plaintiff were insufficient to establish harassment was severe or pervasive enough to make the working environment objectively hostile or abusive).

[160] 168 F.3d 871, 873 (5th Cir.), cert. denied, 528 U.S. 963 (1999).

[161] *Id.* at 872.

several occasions, rubbing one of his hands from her shoulder down to her wrist while standing beside her.[162] She also alleged that when she came into a meeting and looked for a seat, he patted his lap and remarked "here's your seat."[163]  The Fifth Circuit determined that these actions, while offensive and boorish, were not severe and pervasive.[164]  The court noted that "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace."[165]

Similarly, in *Hockman v. Westward Communications, L.L.C.*,[166] the plaintiff testified that her alleged harasser brushed up against her numerous times, popped her on the rear with a rolled up newspaper, grabbed her face and tried to kiss her, attempted to grab her breast, and made comments about coming in early so they could be alone.[167]  She additionally claimed that he trapped her in a bathroom by standing in a doorway.[168]  Noting that the plaintiff continued to competently discharge her duties during the period of alleged harassment, the court determined that the conduct was not sufficiently severe and pervasive to constitute actionable sexual harassment.[169]

Like the plaintiffs in *Shepherd* and *Hockman*, plaintiff alleges boorish and offensive conduct by Villalobos, but by her own testimony and that of various company witnesses, she continued to competently perform her position.  Her ability to succeed at her position was not affected, let alone destroyed.  Accordingly, Plaintiff's claim that Villalobos created a hostile work environment fails as a matter of law.

---

[162] *Id.*
[163] *Id.*
[164] *Id.* at 874.
[165] *Id.* (citing *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996), cert. denied, 519 U.S. 1055, 117 S. Ct. 682, 136 L. Ed. 2d 607 (1997)).
[166] 282 F. Supp. 2d 512 (E.D. Tex. 2003).
[167] *Id.* at 516.
[168] *Id.*
[169] *Id.* at 521.

c.    **Mary Kay has Conclusively Established an Affirmative Defense Under *Faragher* and *Ellerth*.**

Even if Herrera succeeds in overcoming the Fifth Circuit's high threshold for harassment, Mary Kay has asserted as an affirmative defense to liability "(a) that [Mary Kay] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that [Herrera] unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."[170]   Mary Kay is entitled to summary judgment as a matter of law based on this defense.

(1)    **Mary Kay Exercised Reasonable Care to Prevent and Correct Harassing Behavior.**

A defendant can demonstrate the first prong of the *Faragher/Ellerth* defense by virtue of its institutional policies and educational programs regarding sexual harassment.[171]   The existence of an appropriate anti-harassment policy usually satisfies the first prong of the defense.[172]   In *Lauderdale v. Texas Department of Criminal Justice*, the defendant demonstrated that the plaintiff had received sexual harassment training and copies of the company's sexual harassment policy statements.  These facts were sufficient to demonstrate the first prong of the defense.[173] Like the Texas Department of Criminal Justice, Mary Kay exercised reasonable care to prevent and correct alleged harassment or other misconduct.  Plaintiff acknowledges her receipt and understanding of Defendant's harassment policy, and she made numerous complaints over the years, including claims of unfair treatment and favoritism as well as sexual harassment.[174]  Mary

---

[170] *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher*, 524 U.S. at 807 (1998); *see also Lauderdale v. Texas Dep't. of Criminal Justice*, 512 F.3d 157, 164 (2007).
    [171] *Id.*
    [172] *Taylor v. Texas Dept. of Criminal Justice – Inst. Div.*, No 3:98CV2972-AH, 2000 U.S. Dist. LEXIS 5853 (N.D. Tex. May 1, 2000) (citing *Ellerth*).
    [173] *Id.*
    [174] In fact, according to the Mary Kay's documentation of Plaintiff's complaints, she almost exclusively complained about workplace conditions – favoritism and the like – and made only two or three complaints that even

Kay did not understand all of these claims to be alleging discrimination or harassment; however, Mary Kay investigated Herrera's claims of sexual harassment when it understood that was the basis for her complaints.[175]  It is undisputed that with respect to the only documented instance of Plaintiff reporting harassment of a sexual nature to Defendant (when she reported to Steve Morton in 2005), Defendant mounted an extensive investigation lasting several weeks and encompassing interviews with multiple employees from the line.[176]  That investigation did not substantiate all of Plaintiff's claims, but Defendant took remedial measures with respect to those claims.[177]

### (2)    Herrera Unreasonably Failed to Take Advantage of Preventive or Other Corrective Opportunities Provided by Mary Kay.

Plaintiff alleges that she complained to several individuals at different times during her tenure with Defendant.[178]  However, though she made allegations of sexual harassment by Villalobos to Mary Kay Vice President Steve Morton in May 2006, she did not repeat those allegations to Chaffin during an hour-and-a-half interview a few days later, even though she knew that this was the time for her to tell the company about everything that had happened to her to that point.[179]  Further, she did not return to Morton or consult with the General Counsel (as directed by the company's harassment reporting policy) when things allegedly "got worse" after Chaffin completed her investigation.[180]  The Fifth Circuit has made it clear that it is unreasonable as a matter of law for an employee to fail to use other avenues of reporting when a particular

---

remotely touched on the facts made the basis of her lawsuit.  For purposes of this Motion, however, Mary Kay must, and does, assume that Plaintiff's version of the facts is true.

[175] Defendant also investigated and took action with respect to Plaintiff's claims of favoritism that were not tied to claims of sexual harassment or discrimination.  MK 349 (App. __).

[176] Chaffin Dep. at 30 (App. 259); *id.* at Exhibit 1 (App. 273-74).

[177] Chaffin Dep. 81-82, 84-85 (App. 270.1 – 270.2, 270.3 – 270.4); Rosa Dec. at Exhibit A (App. 331).

[178] Plaintiff testified that she reported sexually harassing conduct of her by Villalobos and Macedo to JoAnn Cheshire, Rick Felton, Gale Touchstone, and Mary Lou Rosa.  These individuals have no records of any such complaints, and in fact deny that any such complaints were made.  *See* Section V.D above.

[179] *See* Section V.D.2 above.

[180] Herrera Dep. at 179-181 (App. 44-45).

**DEFENDANT MARY KAY INC.'S BRIEF IN SUPPORT**
**OF ITS MOTION FOR SUMMARY JUDGMENT – Page 32**

avenue proves ineffective.[181]

In *Lauderdale*, the defendant's policy offered numerous avenues for reporting sexual harassment, including any supervisor, the human resources department, and the Executive Director as well as identifying the Equal Employment Opportunity Commission and the Texas Commission on Human Rights.[182]   When the plaintiff complained initially to her immediate supervisor, the supervisor indicated unwillingness to act on the complaint.[183]   The plaintiff failed to use the other reporting avenues, and the Fifth Circuit determined that this failure was unreasonable.[184]   Like the plaintiff in *Lauderdale*, Plaintiff unreasonably failed to complain higher up the chain.   Accordingly, Defendant's affirmative defense is established as a matter of law.

**B.      Herrera Cannot Establish Her Claim For Retaliation as a Matter of Law.**

The *McDonnell Douglas* burden-shifting structure applies to unlawful retaliation claims.[185]   To establish a case of unlawful retaliation, Plaintiff must first make a prima facie showing and then the burden then shifts to Defendant to demonstrate a legitimate, nondiscriminatory [non-retaliatory] purpose for the employment action.[186]   If Defendant satisfies this burden, Plaintiff must then establish that the employer's reason for the adverse action was merely a pretext for the real, discriminatory purpose.[187]   Furthermore, to prove pretext in her retaliation claim, Plaintiff must establish that unlawful retaliation, and not the reasons articulated

---

[181] *Lauderdale*, 512 F.3d at 165.

[182] *Id.*

[183] *Id.*

[184] *Id.* (citing *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 412 (5th Cir. 2002).  *See also Nicholson v. Dart Container Corp. Co. of Miss. LLC.*, 602 F. Supp. 760 (S.D. Miss. 2008) (plaintiff's failure to report all alleged incidents and to take advantage of other avenues when her first report was ineffective was unreasonable).

[185] *Byers v. The Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000).

[186] *Aldrup v. Caldera*, 274 F.3d 282, 286 (5th Cir. 2001); *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir. 1997).

[187] *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998).

by Defendant, was the "cause-in-fact" of her nonselection.[188]  Under the "cause-in-fact" analysis, the plaintiff must "prove that the adverse employment action would not have occurred 'but for' the protected activity."[189]  To meet this burden, Plaintiff must set forth evidence that Defendant would not have discharged her "but for" engaging in protected activity.[190]  While this portion of the analysis may seem identical to the "causal link" step in the prima facie case, the burden required to satisfy this prong is more stringent.[191]

1.      **Mary Kay Has Articulated Legitimate, Non-Discriminatory, Non-Retaliatory Reasons for Its Actions.**

Continuing with the discussion of the standard, presuming plaintiff satisfies her burden of proving a prima facie case,[192] the burden shifts to the defendant to produce "any evidence which, taken as true, would permit the conclusion that there was a non-discriminatory reason for the adverse action."[193]  As set forth more fully above, Herrera alleges two adverse employment actions: 1) her placement in heavy zones[194] and 2) the termination of her employment.  In response, Mary Kay has articulated legitimate, non-discriminatory, non-retaliatory reasons for both of these actions.  With respect to Hererra's placement in heavy zones, Mary Kay has presented testimony (including Herrera's own) that she was one of the best workers, well suited to handling the heavy work flow in those zones.[195]  Further, Mary Kay's investigation into Herrera's claims that certain "favorite" employees were not placed in these zones indicated that

---

[188] *Taylor v. United Parcel Servs. of Am., Inc.*, 2003 U.S. Dist. LEXIS 23510 at *28 (N.D. Tex. Dec. 31, 2003) (plaintiff failed to prove that retaliation was the cause-in-fact of his discharge); *McDaniel v. Babbitt*, Civil Action No. 3:96-CV-3423-G,1998 U.S. Dist. LEXIS 1850 at *11-12 (N.D. Tex. Feb. 11, 1998) (same).

[189] *McDaniel*, 1998 U.S. Dist. LEXIS 1850 at *12 (citing *Sherrod v. Am. Airlines, Inc.,* 132 F.3d 1112, 1123 (5th Cir.1998)).

[190] *Medina v. Ramsey Steel Co*., 238 F.3d 674, 684-85 (5th Cir. 2001); *see also Sherrod*, 132 F.3d at 1123.

[191] *See McMillan v. Rust Coll., Inc*., 710 F.2d 1112, 1116-17 (5th Cir. 1983).

[192] Defendant concedes Plaintiff's establishment of a prima facie case of retaliation only for purposes of this motion and does not waive the right to argue that Plaintiff has not established a prima facie case at a later time.

[193] *Hearn v. Greyhound Lines, Inc.*, No. 3:97-CV-1483-R, 1998 U.S. Dist. LEXIS 11375 at *10 (N.D. Tex. July 21, 1998).

[194] As set forth more fully in Section VI.A.1, placement in heavy zones is not a tangible employment action.

[195] *See* Section V.A. above.

some of those she indicated were "favorites" were indeed working in heavy zones.

With respect to the termination of Herrera's employment, Mary Kay has presented substantial evidence that Herrera was terminated for a host of reasons, including without limitation the determinations that she had threatened Villalobos, that she had provided false or misleading information to the company with respect to the investigation into her failure to respond to pages, and that she asked another employee to lie for her in connection with the same investigation.[196]

Mary Kay has therefore satisfied its burden of production as to a legitimate, non-discriminatory, non-retaliatory reason for both of the adverse employment actions alleged by Herrera.

**2.      Herrera Has No Evidence of Pretext as to Any of Mary Kay's Legitimate, Non-Discriminatory, Non-Retaliatory Reasons for Its Actions.**

Upon the employer's articulation of a legitimate nondiscriminatory reason for the adverse action, the burden shifts back to the plaintiff to demonstrate that the reason produced was merely a pretext for discrimination.[197] Summary judgment for an employer is proper "if the Plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred."[198]

**a.      Termination of Herrera's Employment.**

Herrera has no evidence whatsoever that the decision-makers as to her termination were in fact retaliating against her or that but for her engaging in protected activity, she would not have been terminated.  In fact, by Herrera's own testimony, she had engaged in protected activity

---

[196] *See* Section V.A.
[197] *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004).
[198] *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148 (2000).

throughout her employment with Mary Kay.[199]  It was not until Mary Kay determined that she had threatened Villalobos and generally continued her pattern of disruption of the workplace that Herrera's employment was terminated.  She therefore cannot establish a "but for" causal connection between her alleged protected activity and the termination of her employment.[200]

Herrera asserts that she did not threaten Villalobos; however, this assertion is not evidence that Mary Kay did not believe she had done so.  In the aftermath of its investigation, which produced credible evidence of the threat,[201] Mary Kay was entitled to make a determination as to whether to continue to employ Herrera.  It is well-recognized in this Circuit that employers must be given the latitude to make business decisions, and that the Court should not second-guess such decisions.[202]  The Fifth Circuit has clearly stated: "While we …might have made a different employment decision, we should not substitute our judgment…for the employer's in the absence of proof that the employer's nondiscriminatory reasons are not genuine."[203]  Here, Mary Kay's decision to terminate Herrera was based on credible evidence derived from extensive witness interviews.  That decision was not based in any way on a discriminatory purpose and should not be disturbed.  Plaintiff cannot demonstrate that her employment would not have been terminated "but for" her engaging in protected activity, and her retaliation claim fails as a matter of law.

### b.      Occasional Assignment to Heavy Zones.

Herrera's own testimony demonstrates that she was one of the best workers, and she admitted that she was able to handle working in the heavy zones.  She has no evidence

---

[199] *See* Section V.D. above.

[200] In fact, Rick Felton knew of Plaintiff's complaints as early as 2006, when he was briefed on the investigation done by Susan Chaffin.  *See* Section V.D.2 above.  If Felton was motivated to terminate Plaintiff's employment by protected activity, he certainly could have done so at any point after that investigation.  He did not do so.

[201] *See* Section V.A.

[202] *Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993).

[203] *Louisiana Office of Cmty. Servs.*, 47 F.3d 1438, 1448 (5th Cir. 1995).

whatsoever that she was assigned to those zones for any reason other than her job skills.  She certainly cannot demonstrate that but for her alleged protected activity, she would not have been assigned to heavy zones.

### 3.   Herrera's Claim for Gender Discrimination Fails as a Matter of Law.

#### a.   There Is No Evidence That Similarly-Situated Male Employees Were Treated Differently.

While it is unclear from her Complaint whether Herrera is asserting a claim for gender discrimination,[204] there is no doubt that she has failed to meet her prima facie burden for such a claim.  To establish a prima facie case for gender discrimination in employment, an employee must demonstrate that (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of an adverse employment action, and (4) she was treated less favorably because of her membership in that protected class than were other similarly situated employees of the opposite gender under nearly identical circumstances.[205]  As a matter of law, Herrera cannot meet her prima facie burden, because she makes absolutely no allegation – in either her pleadings or her deposition – that there were male employees on the line who were not terminated under similar circumstances.  Therefore, and to the extent that she is actually asserting the claim, the Court should grant Mary Kay summary judgment on her gender discrimination claim.[206]

---

[204] Herrera's second cause of action is for "DISCRIMINATION/RETALIATION."  (Complaint at 22.)

[205] *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish*, No. 07-31027, 2009 U.S. App. LEXIS 10451 at * 25-26 (5th Cir. La. May 12, 2009) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001).

[206] *Id.*

**b.     There Is No Evidence That Defendant's Legitimate, Non-Discriminatory, Non-Retaliatory Reason for the Termination of Plaintiff's Employment Is a Pretext for Discrimination.**

There is no evidence that the legitimate, non-discriminatory, non-retaliatory reasons for the termination of Plaintiff's employment are pretexts for discrimination.  As set forth above in Section VI.B.2, Defendant has articulated legitimate, non-discriminatory, non-retaliatory reason for the termination of Plaintiff's employment.  There is no evidence that these reasons were pretext for discrimination.

**C.     Herrera's Claim for Assault Fails as a Matter of Law, Because There is No Evidence That Villalobos Was Acting Within the Scope of His Employment.**

Finally, Herrera has failed to raise a genuine issue of material fact with respect to her assault claim.  For Mary Kay to be liable for any intentional tort committed by one of its employees, that employee must be acting within the scope of his employment.[207]  "An employee's tortious conduct is within the scope of employment when that conduct is of the same general nature as that authorized or incidental to the conduct authorized."[208]  If the employee was acting out of personal animosity, rather than to accomplish a duty entrusted to the employee, the employer is not liable.[209]  Thus, under this well-established Texas law, Herrera has the burden to prove that Villalobos was acting within the authorized by Mary Kay at the time of the alleged assault.

Herrera has wholly failed to meet her burden on this claim.  First, there is no evidence in the summary judgment record that Villalobos was acting in a way that was incidental to his authorized employment duties by allegedly "forcing his groin into [Herrera's] rear-end;"

---

[207] *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 617 (Tex. 1999).
[208] *Wrenn v. G.A.T.X. Logistics, Inc.*, 73 S.W.3d 489, 494 (Tex. App.—Fort Worth 2002, no pet.) (citing *Smith v. M Sys. Food Stores, Inc.*, 297 S.W.2d 112, 114 (1957)).
[209] *See id.* (citing *GTE Bruce*, 998 S.W.2d at 618).

"forcing her fingers into his mouth;"[210] or "putting his face up to her in a menacing manner."[211] And while Herrera alleges in her Complaint that Villalobos is a "vice-principal" of Mary Kay, no reasonable jury could find that Villalobos represented Mary Kay "in its corporate capacity" and that he possessed "authority to employ, direct, and discharge servants of the master, and those to whom a master has confided the management of the whole or a department or division of his business."[212]   Villalobos has no such authority, and Herrera herself even concedes that her supervisors were Gale Touchstone and Craig Williams.[213]   Therefore, Herrera has failed to raise a triable issue on whether Villalobos was acting within the scope of his employment when he committed the alleged assaults.  For these reasons, the Court should grant summary judgment on Defendant's assault claim.

## VII.
## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendant Mary Kay Inc. respectfully urges the Court to grant its Motion for Summary Judgment, dismiss all of the claims of Plaintiff Guadalupe Herrera with prejudice, enter final judgment to the same effect, and grant Defendant any other relief to which it may be justly entitled.

---

[210] Plaintiff admits that she did not report this incident to Candie Rodriguez, Joanne Cheshire or Steve Morton.  Herrera Dep. 178, (App. 44).
[211] Complaint at 23.
[212] *Bruce*, 998 S.W.2d at 618 (defining vice-principal and noting defendant "was the highest ranking management person stationed at the Nash facility who "had authority to employ, direct, and discharge employees").
[213] Herrera Dep. at 80 (App. 21).