# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| GUADALUPE HERRERA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3-08-CV-1309-N |
| | § | |
| MARY KAY, INC., | § | |
| | § | |
| | § | ECF |
| Defendant. | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Respectfully filed this 24th day of July, 2009.

ROBLES LAWFIRM

/s/ Gabriel H. Robles
GABRIEL H. ROBLES
TBN: 17118100
8625 King George Dr.
Suite 234
Dallas, Texas 75235
Tel: 214-361-2411
Fax: 214-361-7074

**ATTORNEYFORPLAINTIFF**

## TABLE OF CONTENTS

Table of Authorities ..... i

Response to Defendant's Statement of Undisputed Facts ..... 1

Herrera's Complaints Against Eduardo Villalobos ..... 1

    Un-controverted Facts Regarding Complaints Against Villalobos ..... 1

    Controverting Facts Regarding Complaints Against Villalobos ..... 4

Witness Deposition Testimony ..... 6

Facts Regarding Complaints Against Macedo. ..... 7

    The Un-controverted Facts. ..... 7

    Controverted Facts Regarding Complaints Against Macedo ..... 9

Testimony of Witnesses ..... 10

Response Arguments and Authorities ..... 10

Summary of Response ..... 10

Herrera Has Stated A Sexual Harassment Claim ..... 11

    The Totality of Circumstances Not Discrete Acts ..... 12

Defendant Had Actual Notice That Plaintiff Was Being Harassed ..... 14

Plaintiff Has Established That She Suffered Tangible Employment Actions ..... 16

    The Summary Judgment Evidence Establishes That Both Macedo and Villalobos Had Authority Over Her Daily Work Assignments and Work Environment ..... 16

    Causal Connection To Tangible Employment Action Established ..... 17

The Termination                                                                                    17

   The Suspension                                                                            20

Plaintiff's Hostile Work Environment Claim                                         22

   Claim As to Macedo's Conduct Is Not Barred                        22

   Plaintiff's Hostile Work Environment Claim Is
      Not Untimely                                                                            24

Defendant Fails to Meet the First Prong off Affirmative Defense

                                                      28

Defendant's Investigations of Plaintiff's Complaints                         28

Documentation of Investigation or Lack Thereof                              28

   Inadequate Investigations                                                           29

   Chaffin's Investigation of Plaintiff's 2006 Complaint             30

   Rodriguez's Investigation of the 2007 Complaint by Macedo  31

   Investigation of Macedo's and Villalobos' Complaints in 2008  33

   The Failure to Respond to Page Incident on January 9, 2008   33

   Villalobos' Threat Complaint on January 11, 2008                   34

Defendant is Not Entitled to the Ellerth/Faragher Affirmative Defense  35

Lack of Preventative Measures - First Element of First Prong            35

Plaintiff Made Reasonable Efforts To Invoke Defendant's Policy       37

Under Applicable Authorities Plaintiff Has Stated a Case Of Retaliation  37

   Prima Facie Case.                                                                          37

   Heavy Zone Assignments                                                             39

Plaintiff's Showing of Pretext                                      41

Plaintiff's Gender And Assault Claims                               45


Conclusion                                                          45

Certificate of Service                                              46

## TABLE OF AUTHORITIES

Burlington Industries, Inc. v. Ellerth,  524 U.S. 742
  118 S. Ct. 2257, 2265 (1998)                                      16, 24, 27

Burlington Northern and Santa Fe Railway Co,. v. White
126 S.Ct. 2405, 2415 (2006)                                        38

Clark Co. School Dist. v. Breeden, 532 U.S. 268 (2001)             26

Desert Palace, Inc. v. Costa, 539 U. S. 90 (2003)                  45


Faragher v. City of Boca Raton, 524 U. S. 775 780 (1998)           12, 25, 28, 36

Harris v. Forklift Sys., 510 U. S. 17, 114 S.Ct. 367 (1993)        12, 24, 27

National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002)   11, 26

Oncale v.Sundowner Offshore Services, Inc., 523 U.S. 75 (1998)     12

Reeves v. Sanderson Plumbing Products, 530 U. S. 133 (2000)        45

Beard v. Flying J Inc., 266 F. 3d 792 (8th Cir. 2001)              30

Breda v. Wolf Camera & Video, 222 F. 3d 886 (11th Cir. 2000)       16

Broom v. Regal Tube Co., 881 F.2d 412 (7th Cir. 1989)              30

Charlotte Lynn Rawlins and Cheryl Jenkins Mathis v
Avco Corporation, 819 F. 2d 630, 635 (6th Cir. (1987)              35, 36

Clark v. United Parcel Service, Inc., 400 F.3d 341 (6th Cir. 2005) 30, 35

Conto v. Concord Hospital, Inc., 286 F. 3d 79, 81 (1st Cir. 2001)  13

Cortes v. Maxus Exploration Co., 977 F. 2d 195 (5th Cir. 1992)     14

Douglas v. DynMcDermott Petroleum Operations Co.,

144 F.3d 364 (5th Cir. 1998)                                            38

Fairbrother v. Morrison, 412 F.3d 39 (2nd Cir. 2005)                    27

Fellows v. Universal Restaurants, Inc., 710 F. 447, 451 (5th Cir 1983) 23

Frapella-Crosby v. Horizon Healthcare, 97 F. 3d 803 (5th Cir. 1996)    11

Gamble v. Birmingham Southern Railroad, 514 F. 2d 678 (5th Cir. 1975)  23

Gee v. Principi, 289 F. 3d 342 (5th Cir. 2002)                         18, 42

Harvill v. Westward Communications, 433 F. 3d 428 (5th Cir. 2005)      13, 38

Hathaway v. Runyon, 132 F. 3d 1214, 1222 (8th Cir. 19987)              13

Howard v. Winter, 446 F. 3d 559 (4th Cir. 2006)                        15

Jackson v. Quanex Corp., 191 F. 3d 647, 659-662 (6th Cir. 1999)        13

Konstantopoulous v. Westvaco Corp., 112 F 3d 710, 717 (3rd Cir. 1997)  13


Llampallas v. Mini-Circuit Lab. Inc., 163 F. 3d 1236 (11th Cir. 1998)  17

LaDay v. Catalyst Technology, Inc., 302 F. 3d 474 (5TH Cir. 2002)      12

LeMaire v. La. Dep't of Trans. & Dev., 480 F. 3d 383 (5th Cir. 2007)   39

Lowrey v. Tex. A & M Univ. Sys., 117 F. 3d 242 (5th Cir. 1997)         38

Long v. Eastfield College, 88 F.3d 300 (5th Cir. 1996)                 18

Laughman v. Malnati Organization, Inc., 395 F. 3d 404 (7th Cir. 2005)  36

McInnis v. Fairfield Communities, Inc.
458 F. 3d 1129 (10th Cir. 2006)                                        29

McKinnis v. Crescent Guardian, Inc., 189 Fed. Appx.
307 (5th Cir. 2006)                                                    15

Pacheco v. Mineta, 448 F. 3d 783 (5th Cir. 20060                       22

Paroline v. Unisys. Corp., 879 F. 2d 100 (4th Cir. 1989)               14

Porter v. California Department of Corrections,
383 F. 3d 1018 (9th Cir. 2004)                                            18

Reinhold v. Commonwealth of Virginia, 135 F. 3d 920 (4th Cir. 1998)       16

Rogers v. EEOC, 454 F.2d 234 (5th Cir. 1971), *cert. den'd*,
406 U.S. 957, 92 S. Ct. 2058 (1972)                                       24

*Russell v. McKinney Hosp. Venture,* 235 F. 3d 219 (5th Cir. 2000)        18

Sanchez v. Standard Brands, Inc., 431 F. 2d 455 (5th Cir. 1970)           23

Shager v. Upjphn Co., 91 F.2d 398 (7th Cir. 1990)                         18

Skidmore v. Precision Printing and Packaging, Inc.,
88 F. 3d 606 (5th Cir. 1999)                                              37

Shepherd v. Controller of Public Accounts of Texas
168 F.3d 871 (5th Cir. 1999)                                              13

Turner v. Baylor Richardson Medical Center, 476 F. 3d 337 (5th Cir. 2007)

Valentine v. City of Chicago, 452 F. 3d 670 (7th Cir. 2006)               15

Vance v. Southern Bell Telephone & Telegraph Co.,
863 F.2d 1503, 1511 (11th Cir. 1989)                                      26

Waltman v. International Paper Co., 875 F. 2d 468, 479 (5th Cir. 1989)     36

Watson v. Blue Circle, Inc., 324 F. 3d 1252 (11th Cir. 2003)              30

Watts v. Kroger Co., 170 F. 3d 505, 509 (5th Cir. 1999)                   16, 25

West v. Nabors Drilling, 330 F. 3d 379 (5th Cir. 2003)                    43

Williamson v. City of Houston, Texas, 148 F. 3d 462 (5th Cir. 1998)       15

Alaniz v. Zamora-Quezada, 2005 WL 2179793 (S.D. Tex. Sept. 8, 2005)       13
                                13

Christine Hawk  v. Americold Logistics, LLC, 2003 U.S. Dist.
LEXIS 3445 (March 6, 2003, E.D. Penn.)                                    14

Hadad v. American Airlines, Inc., 2003 U.S. Dist.
LEXIS 1872 (N.D. Tex. 2003)                                        13, 26

Heelan v. Johns-Mansville Corp., 451 F. Supp. 1382 (D.Colo. 1978)       30

Pittman v. Gen'l Nutrition Corp., 515 F. Supp. 2d 721 (S. D. Tex. 2007)   39

Marsh v. Digital Equip. Corp. 675 F. Supp. 1186 (D.Ariz. 1987)          30

Rogers v. American Heritage Life Insurance Co., 2005 WL 1017808
(N.D. Tex. April 28, 2005)                                         16

Stein v. Chessie Computer Servs., 63 FEP Cases 948 (D. Md. 1993)       22

Yolanda Holden v. Illinois Tool Works, Inc., 2008 WL 183334
(S.D. Tex. Jan. 18, 2008)                                          39

Wade v. Minyards Food Stores, No. 3:03-1403-B, 2005 U.S.
Dist. Lexis 4973 (N. D. Tex. Mar. 25, 2005)                        30

42 U.S.C. § 20003-2(a)(1)                                          24

Section 704(a) of Title VII                                        39

Enforcement Guidance: Vicarious Employer Liability For
Unlawful Harassment by Supervisors § IV C (6/18/99)                17

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

GUADALUPE HERRERA,                      §
                                        §
        Plaintiff,                      §
                                        §
v.                                      §   Case No. 3-08-CV-1309-N
                                        §
MARY KAY, INC.,                         §
                                        §
                                        §   ECF
        Defendant.                      §

## PLAINTIFF'S RESPONSE TO DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff Guadalupe Herrera (hereinafter referred to as "Herrera " or "Plaintiff"), files Plaintiff's Response to Brief In Support of Defendant's Motion For Summary Judgment, and would show this Honorable Court that for the reasons set forth below, Defendant's motion should be denied in its entirety.

### I.

**A. Response to Defendant's Statement of Undisputed Facts.**

Plaintiff has responded to Defendant's Statement of Undisputed Facts as set forth at pages 1 - 9 of its Brief [Doc. 39] in Plaintiff's Response To Defendant's Statement of Undisputed Facts (hereinafter referred to as "Controverting Facts" or "C/F")), filed as a separate event.

**B. Herrera's Complaints Against Eduardo Villalobos ("Villalobos").**

**1. Un-controverted Facts Regarding Complaints Against Villalobos.**

Plaintiff has identified the relevant un-controverted facts that show she reported and

complained of the inappropriate conduct of Villalobos at pages 7 - 8 of her Brief In Support of her Motion For Partial Summary Judgment. [Doc. 36]. The record shows that on May 5, 2006, Plaintiff reported to Steve Morton ("Morton") Vice-President of US Branch Operations, that she was being groped by Villalobos. Plaintiff reported to Morton that she had previously reported this harassment to Mary Lou Rosa ("Rosa"), the local HR Generalist, but that nothing had been done and the harassment continued. Facts, at par. 5. Plaintiff also reported to Morton that she and others had observed Villalobos kissing a female employee on the job. See Plaintiff's Appendix of Evidence ("PAE") [Doc. 37] at p. 27. Plaintiff was informed that Susan Chaffin ("Chaffin") would conduct an investigation of her complaint. The record shows that on May 10, 2006 Plaintiff reported to Chaffin, Director of Compensation & Benefits, in much more detail, the particulars of the harassment by Villalobos. See Plaintiff's Statement of Undisputed Facts included within her Motion For Partial Summary Judgment [Doc]. 35 (referred to here as "Facts"), at par. 10. The local HR Generalist, Rosa admitted to Chaffin on May 10, 2006, that Plaintiff had previously reported Villalobos' conduct to her. Facts, at par. 9. Chaffin disclosed to Plaintiff that Morton had conveyed to her the information she reported to him on May 5, 2006. Facts, at par. 10. Plaintiff reported to Chaffin that Villalobos and Norma (Cazares) "do not act right" and that Macedo covers for Villalobos. Facts, at par. 13. Plaintiff reported having observed Villalobos kissing Norma in front of a tour group passing through. Facts, at par. 13. Plaintiff reported to Chaffin that Villalobos touches others, especially temp (temporary) workers and that he was always grabbing and kissing employee's hands and fingers. Facts, at par. 13; PAE 22.. Chaffin did not ask Plaintiff about the groping complaint made to Morton. Facts, at par. 9. Plaintiff reported to Chaffin of numerous conversations on the line between several workers who tried to tell Norma that Villalobos was

married and that she not engaged in these activities with him. PAE 22. Gabriela Olivas ("Olivas") reported that there was much favoritism. PAE 24. She reported that Gail Touchstone ("Touchstone") was never around and that Macedo acts like a supervisor. PAE 24. She reported that some people are helped when they stop the line but not everyone. Olivas reported that Villalobos sometimes works as a floater and comes over to help Norma but not others. Id. Olivas reported she got no help when she stopped the line and other laughed at her. Id. Olivas reported that Villalobos and Letitia do not attend safety meetings - they leave early. Id. Olivas reported that people think that Villalobos and Norma are together; they are always kissing and touching. Id. Olivas reported that she occasionally saw Villalobos kissing and touching others, but mostly Norma. Id. Sharon Alonzo ("Alonzo") reported that "if you are in the clique you can do what you want." PAE 25. Alonzo reported that Touchstone was good friends with Macedo outside of work. Id. Alonzo reported that Villalobos does what he wants. Id. Alonzo also reported that Ignacio, Norma, Sammi and Letitia also do what they want. Id. Alonzo reported that Touchstone will "hold things against you." Id. She reported that Touchstone wanted to hear things, but she doesn't want to hear the negative stuff. Id. Alonzo reported that there is favoritism. Id. Alonzo reported that "people talk about Ana, that she has girlfriends." Id. Alonzo reported to Chaffin that she once saw Macedo in a bathroom stall with a temporary worker. Id. Alonzo also reported that she observed Macedo and Letitia "face to face with their arms around each other at Ana's desk." PAE 25. Alonzo reported to Chaffin that Ana's friends do not always follow the rules. Id. Chaffin did not interview Villalobos about the harassment complaint made by Plaintiff. Facts, at par. 29, 30. Had Chaffin interviewed Villalobos, she would have discovered that he did not deny using the term "hija de la grand puta madre" (daughter of a grand whore), when he was upset. Facts, at par. 56. She would have discovered that

he did not deny grabbing Torres' hand and putting her fingers into his mouth. Id. Chaffin would have discovered that Villalobos referred to a male coworker as a "fag." Facts, at par. 57. Chaffin would have discovered that Rosa had never interviewed Villalobos about any harassment complaint made by Plaintiff. Id.

### 2. Controverting Facts Regarding Complaints Against Villalobos.

Beyond the un-controverted facts identified above, Plaintiff identifies the following controverting evidence which shows that she reported the harassment by Villalobos to her supervisors and Human Resources personnel beginning as early as 2005  The Controverting Facts ("C/F") show that Plaintiff began working for Villalobos in 2004. C/F at par. 10. Plaintiff first reported to Touchstone that Villalobos had sexually harassed her (verbally) in March or April, 2005. C/F at par. 11. Thereafter, Plaintiff reported Villalobos' harassment to both Touchstone and Rosa on April 11, 2005. (C/F at par. 12). Plaintiff reported verbal harassment by Villalobos on April 18, 2005. (C/F/ at par 13). On January 10, 2006 Villalobos propositioned Plaintiff in the presence of Macedo, who laughed. (C/F at par. 14(a). Plaintiff reported the verbal harassment by Villalobos to Touchstone on the same day, who stated to Plaintiff that she was a good worker but she should keep her mouth closed. Id. On February 6, 2006 Plaintiff reported to Touchstone that Villalobos had verbally harassed her by saying "he could please her in many ways" while sticking his tongue out and licking his lips. (C/F at par. 15). On October 10, 2006 Plaintiff reported to Touchstone and Rosa, that Villalobos had verbally harassed her about the way she smelled. (C/F at par. 18). On November 9, 2006 Plaintiff reported to Touchstone that Villalobos had verbally harassed her that day. (C/F at par.19). On November 13, 2006 Plaintiff reported to Touchstone that Villalobos had verbally harassed her. (C/F at par. 20). On June 18, 2007 Plaintiff reported to Touchstone that

Villalobos had said to her that he had a "small penis but a big tongue." (C/F at par. 21). On June 18, 2007 Plaintiff made an entry in her daily planner that she was feeling depressed because every time she went to complain about Villalobos nothing was done and that Touchstone or Rosa would not help her, and she did not know what else to do. (C/F at par. 21); PRAE 91. On June 18, 2006 Plaintiff went to Rick Felton, the General Manager of the Southwestern Distribution Facility, to complain of Villalobos' harassment and that neither Touchstone or Rosa were doing anything to stop him. Felton responded by telling Plaintiff that she was lying. (C/F at par. 23); PRAE 96-97. Later on that day Plaintiff was given a written reprimand by Felton. PRAE 97; PAE 28. June 26, 2007 Plaintiff reported to Touchstone that Villalobos had threatened her and laughed that the company would not do anything to him even if she did complain. (C/F at par. 25). On July 9, 2007 Villalobos came up behind Plaintiff while she was working in Zone 6 and grabbed her right hand and squeezed her fingers into his mouth while saying that Plaintiff could now go to the restroom and clean herself while thinking of him. (C/F at par. 26). Plaintiff reported this conduct to Touchstone in the same week it occurred. Id. On July 10, 2007 Villalobos came up behind Plaintiff and grabbed her and pressed his groin into her rear-end while reaching toward her front area. (C/F at par. 27). Plaintiff reported this conduct to Touchstone. (C/F at par. 27). On October 31, 2007 Plaintiff reported to Touchstone that Villalobos had verbally harassed her. (C/F at par. 28). Plaintiff also reported this conduct to Rosa. Id. On November 14, 2007 Plaintiff reported to Touchstone that she was passing by Villalobos on the way to the restroom when he asked if he go with her to help her clean herself. (C/F at par. 30). Plaintiff again reminded Touchstone that she was tired of the harassment and this was all very stressful for her. Id. On December 20, 2007 Plaintiff reported to Touchstone that Villalobos had verbally harassed her. (C/F at par. 31). The record shows that other

employees reported to Chaffin during her investigation, having observed  Villalobos kissing coworker Cazares while she was on the line. (Facts, at pars. 18 & 19); grabbing the hand of a female coworker and sticking her fingers into his mouth (Facts, at par. 19).

**Witness Deposition Testimony.**

Olivas testified that she observed Villalobos grab Iris Torres' hand and stick her fingers into his mouth, and make the comment "before you go to the restroom." PAE 56-58. Olivas testified that she heard Villalobos refer to women using offensive and vulgar words in Spanish. The expression used was "Hija de la grande puta madre") which means daughter of a grand whore. PAE 59. Olivas testified that she heard Villalobos use this expression more than 20 times. PAE 60-61. Olivas testified that she observed Villalobos giving certain girls easier assignments on the line, one of which was Sammi Trejo. PAE 65, 70-71. Olivas testified that she believed that Villalobos was a dirty man because of the way he talked about women and their bodies. PAE 72-73. Olivas testified that there was favoritism on the line in that Villalobos helped Norma but not the others. PAE 24. Benjamin Zimmer testified that Villalobos made homosexual comments to him. PAE 101. Zimmer testified that he heard Villalobos say to employees on the line that he had a "big penis" or a "big dick" and that he would " fuck other men in the ass." PAE 102-109, 116. Zimmer testified that Villalobos referred to him as a ""Joto" and a "maricon," and as a "faggot." PAE 102. Zimmer testified that he heard Villalobos say to Plaintiff while she was working on the line, that he had "a small dick but a long tongue." PAE 103, 107. Zimmer testified that he heard Villalobos use the expression "hija de la grand puta," when referring to temporary female employees. PAE 104-105. Zimmer testified that he observed Villalobos hugging, touching or kissing Norma Cazares sometime during the period between 2005 and 2008. PAE 106. Zimmer testified that he saw Villalobos with

his arms around her waist and he was licking and kissing her ear. PAE 106. Zimmer testified that

he heard Villalobos make vulgar comments about Plaintiff. PAE 108. Zimmer testified that

employees were afraid to complain about Villalobos. PAE 110.

Additionally, Plaintiff reported to Chaffin that she had complained to the Rosa who had also

failed to stop the harassment. Facts, at pars. 11, 16 & 33. On May 10, 2006 Plaintiff complained

to Chaffin that Rosa was not being fair to her and of not listening to her complaints. Facts, at par.

16. Chaffin did not address this complaint by Plaintiff. PAE 21-26   On January 9, 2008 Plaintiff

reported to Craig Williams that Villalobos had threatened her and caused her to fear for her safety.

(C/F at par. 36) Williams responded that he was to busy.  On January 11, 2008 Plaintiff reported the

threat and other inappropriate conduct by Villalobos to Joanna Cheshire, Vice President of

Southwest Branch Operations. (C/F at par. 37).  Plaintiff was terminated on January 21,2008 after

Villalobos accused her of making a threat against him.

**C. Facts Regarding Complaints Against Macedo.**

**1. The Un-controverted Facts**.

Plaintiff has identified the relevant un-controverted  facts that show she reported the

inappropriate conduct of Macedo to Morton on May 5, 2006 and to Chaffin on May 10, 2006,  at

pages 7 - 8 of her Brief In Support of Motion For Partial Summary Judgment. [Doc. 36]. The record

shows that on May 5, 2006 Plaintiff reported to  Morton  that Macedo was "making sexual advances

toward other female employees." Morton wrote that Plaintiff reported that this conduct had occurred

over an "extended period of time." Id. Morton had the impression that it had occurred for a number

of years. Id. Plaintiff reported that Macedo **"displays  favoritism to those women who respond**

**positively to these advances and criticizes and makes things difficult for those who don't."** Id.

Plaintiff reported to Morton that she fell into the second group (those that did not respond positively to Macedo's sexual advances). Id. Morton documented that Plaintiff reported that she had once observed Macedo kissing another female employee in the restroom, and that there was at least one other employee who saw this. Id. Morton documented that Plaintiff had reported to him "that at some point in the past Tamara had received a threatening note which was put on her windshield by one or more of the women who accepted Ana's advances; the note essentially said 'stay away from Anna or else.' " Id. On May 10, 2006 Plaintiff reported to Chaffin concerning a dispute between Macedo and Tamara. Plaintiff reported that; a threatening note had been left on Tamara's windshield by a jealous girlfriend. (PAE 21). Plaintiff provided the names of the employees suspected of writing the note. Id. **Plaintiff reported to Chaffin that Tamara had warned her that she feared that Macedo may try to harm Plaintiff.** PAE 21. Plaintiff reported to Chaffin that the Macedo had convinced Tamara to make the false report against her because she liked Tamara. PAE 21. Plaintiff reported to Chaffin that Macedo who used to date Victoria and that Macedo would give her hugs, and take her to lunch and say to her that if she was good to Macedo she would become a full-time employee. PAE 22. Plaintiff reported to Chaffin that Macedo herself told her that she liked girls and that there is nothing wrong, and that everyone knows. PAE 22. Plaintiff identified another employee named Monica that she believed had something going on with Macedo. Id. Plaintiff reported to Chaffin that she observed Sammi kiss Macedo while they were working on the line a couple of weeks earlier. PAE 22. A year later Plaintiff reported to Rodriguez that Macedo was dating Sammi and that she had observed Macedo kissing Sammi whenever she walked by. PAE 50. Plaintiff reported to Chaffin that she believed that Macedo was trying to make Letitica jealous. PAE 22. Plaintiff reported to Chaffin that Macedo bad-mouthed her to other employees and asked them

not to talk to Plaintiff. PAE 23.

Other employees reported to Chaffin in May - June, 2006 having observed employees kissing on the line. (Facts, at par. 17) Sharon Alonzo ("Alonzo") reported to Chaffin that she observed Macedo in a bathroom stall with a temporary worker. (Facts at par. 25) Alonzo also reported having observed Macedo and Letitia face to face with their arms around each other at Macedo's desk. (Facts at par. 25)   See Facts, at pars. 1, 5, 9, 10, 13, 18, 19 & 69. [Doc. 35].

### 2. Controverted Facts Regarding Complaints Against Macedo.

Beyond the un-controverted facts identified above, which establish that Defendant had actual knowledge of the harassing conduct of Macedo as of May 5, 2006, Plaintiff identifies the following controverting evidence which shows that she reported the harassment by Macedo to her supervisors and Human Resources personnel as early as 2003. See C/F at pars. 9 (in 2003 Plaintiff reported to her then supervisor that Macedo was sexually harassing female subordinates). On May 1, 2006 Plaintiff reported that she saw Macedo kissing another female employee in the restroom to Touchstone and Rosa. PAE 3; Facts, at par. 1. Another specific example of the information reported to Rosa relates to the Tamara incident for which Plaintiff was disciplined for providing inaccurate or misinformation to Human Resources on June 12, 2007 concerning Tamara's difficulties with Macedo. PAE 28. This entire incident was well documented in Chaffin's notes of her May 10, 2006 interview with Plaintiff. PAE 21. The disruptive nature of Macedo's sexual advances in the workplace is demonstrated by the threatening note placed on Tamara's car by a jealous coworker. PAE 5. The note written in Spanish warns Tamara she better leave her job or things would go very bad for her. "Leave Ana in peace - she is mine." "This is just a warning or else you will regret it". Id. Chaffin did not investigate this incident. Facts, at par. 28, 29 (Chaffin did not ask Tamara if

Macedo was pressuring her into a sexual relationship in order for her to keep her job). Chaffin did not ask Macedo about the report made by Plaintiff and confirmed by Alonzo, that she had been seen in a bathroom stall with a female temporary worker. Facts, at par. 30, 31, 36. Chaffin did not investigate Plaintiff's report confirmed by Alonzo, that Touchstone threatened employees who complained. Facts, at par. 35. Olivas testified that she complained to Touchstone about the preferential treatment by Macedo. PAE 66-67, 70-71.

**Testimony of Witnesses.**

Zimmer testified that he observed Macedo and Sammie hugging each other, rubbing or brushing their breasts up against each other. PAE 112, 115. Zimmer testified that he observed Irasema sitting on Macedo's lap in her office. PAE 115. Zimmer testified that he observed Macedo with her hand inside the crotch of an employee he identified as Leticia. PAE 113. He stated that they were working at the head of the line and as he was walking by he observed Macedo with her hand up inside the crotch area of Leticia. PAE 113-114.

**II.**

**RESPONSE ARGUMENTS AND AUTHORITIES**

**Summary of Response.**

Defendant's motion largely ignores the un-controverted evidence in this case. Defendant argues that Plaintiff was not sexually harassed within the meaning of Title VII because the conduct she complains of was nothing more than isolated incidents that may have been boorish and offensive but not severe and pervasive. Even if it was severe or pervasive, Defendant argues that it is not liable to Plaintiff because it took timely and effective remedial action to stop the harassment. The evidence however, shows completely the opposite. When all of the relevant conduct, including the

severity and duration of the conduct, and the impact it had on Plaintiff's mental health is considered by the Court, as it must, it clearly rises to the level of being both severe and pervasive, although she need only prove that it was one or the other. With respect to the affirmative defense asserted by Defendant to avoid liability, the evidence shows that Defendant failed miserably on both elements of the first prong. The evidence shows that Defendant, a large employer with far flung operations, failed to document complaints of harassment in the first instance; failed to keep track of complaints against the same offender(s); failed to immediately separate the victim from the alleged offender(s); failed to interview the named offenders; failed to maintain accurate records of its investigation; reprimanded employees who made complaints of harassment; threatened employees who did complain, and tolerated abusive treatment of the victim by the accused.

**A. Herrera Has Stated A Sexual Harassment Claim.**

For the reasons set forth by Plaintiff in her Brief In Support of her Motion For Partial Summary Judgment which are incorporated herein by this reference, Plaintiff has stated a claim under Title VII for which Defendant is liable to her.[1] See Brief at pp. 1- 5. Plaintiff adds the following to her arguments. A hostile work environment although comprised of a series of separate acts, constitutes one unlawful employment practice, so long as one act contributing to the claim occurs within the filing period, the entire period of hostile environment may be considered by a court for purposes of determining liability. *National Railroad Passenger Corp. v. Morgan*, 536 U. S. 101, 122 S.Ct. 2074 (2002). Defendant is a large employer with far flung operations. See PRAE 214-215.

---

[1]Just on the facts related to Villalobos' conduct, this case is similar to the facts in *Frapella-Crosby v. Horizon Healthcare*, 97 F.3d 803 (5th Cir. 1996), which the Fifth Circuit determined were sufficient to create a hostile work environment. The Court noted supervisor's conduct consisting of inquiring into Plaintiff's sexual activity, and offensive sexual comments two to three times a week, sometime in front of coworkers. Thus, verbal abuse alone held sufficient. For this reason the cases cited by Defendant at page 27 & 28 are of no moment. Each case must be viewed on its own merit.

Plaintiff was sexually harassed by Villalobos from early 2005 through the date of her termination on January 21, 2008. Plaintiff was subjected to a hostile work environment because of the sexually inappropriate conduct of Macedo with female subordinates since as early as June, 2003 and which continued until the date of Plaintiff's termination, on January 21, 2008. This case must be measured by consideration of the impact of the behavior of these two supervisors on Plaintiff's work environment over an extended period of time. Essentially, the facts before this court are no different then the facts before the Court in *Faragher v. City of Boca Raton*, 524 U. S. 775 780-782 (1998) which the court found sufficiently severe and pervasive to have created an abusive working environment. Clearly, the harassment by Macedo was sex-based. *See LaDay v. Catalyst Technology, Inc.*, 302 F. 3d 474, 480 (5th Cir. 2002).

### 1. The Totality of Circumstances Not Discrete Acts.

The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations and relationships.[2] *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 , 82 (1998). In *Harris v. Forklift Sys.*, 510 U. S. 17, 114 S.Ct. 367 (1993) the Supreme Court observed that "when the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." 510 U. S. at 21.

---

[2] At pages 26 - 30 Defendant argues that the conduct of Macedo and Villalobos must be considered separately in distinct parts. The authorities cited here establish that the relevant standard of review for hostile work environment is the totality of the circumstances test. The reality for Plaintiff was that from 2003 she complained of Macedo making sexual advances toward her female subordinates and that as a result of these advances her workplace became hostile because of the favoritism shown by Macedo and by the petty jealousy displayed by former lovers or lovers to be. Add to this, Villalobos' constant verbal and physical harassment of her and other female employees. Plaintiff's complaints fell on deaf ears and she grew more and more depressed and stressed and helpless and hopeless. But as Plaintiff reported to Felton on June 18, 2007 she was going to continue making complaints as long as she could. PRAE at par. 23. See also PAE 151at par. 43 (same conversation on January 14, 2008). Her time ran out when Macedo and Villalobos used their influence over Rosa, Felton and Cheshire to terminate Plaintiff. The initial sexual harassment turned into ridicule and intimidation but all of this must be considered in evaluating her hostile work environment claim.

Plaintiff also notes that under Fifth Circuit law she need only establish that the harassment was "severe" or "pervasive." *See Harvill v. Westward Communications,* 433 F. 3d 428 (5th Cir. 2005) (The court noted that the conduct complained of which occurred over a seven month period, consisted of being grabbed and kissed on the check; being popped with rubber bands at her breasts; having her breasts fondled; having her body rubbed on by the harasser; and being subjected to comments about her sex life, were sufficiently severe or pervasive as to constitute a hostile work environment).[3]  In considering whether a workplace is hostile or abusive all circumstances must be considered. *Shepherd v. Controller of Public Accounts of Texas,* 168 F.3d 871 (5th Cir. 871, 874 (5th Cir. 1999).  The determination necessarily requires a fact-specific assessment of all the attendant circumstances. *See Conto v. Concord Hospital, Inc.,* 286 F. 3d 79, 81 (1st Cir. 2001).  A work environment is shaped by the accumulation of abusive conduct resulting in harm cannot be measured by carving it into a discrete series of incidents. *Hathaway v. Runyon,* 132 F. 3d 1214, 1222 (8th Cir. 19987); *Hadad v. American Airlines, Inc.,* 2003 U.S. Dist. LEXIS 1872 (N.D. Tex. 2003).[4]  Proof of harassment directed at others of the Plaintiff's gender is relevant to demonstrate an abusive or hostile work environment. *See Jackson v. Quanex Corp.,* 191 F. 3d 647, 659-662 (6th Cir. 1999).

Finally, where a victim of harassment is required to work in close proximity to the harasser(s), it adds to the hostility of her environment. *Konstantopoulous v. Westvaco Corp.,* 112

---

[3]See also *Alaniz v. Zamora-Quezada,* 2005 WL 2179793 (S.D. Tex. Sept. 8, 2005)(verbal harassment and one kiss on the cheek); *Rogers v. American Heritage Life Insurance Co.,* 2005 WL 1017808 (N.D. Tex. April 28, 2005) (Verbal harassment by one who had authority to  influence an adverse employment decision that caused her termination).

[4]   *Hadad* is of key importance in this response because the Court, through The Honorable Sidney A. Fitzwater, rejected similar defense efforts to take each act complained-of out of the context in which it occurred and then to eliminate from consideration acts which in Defendant's view had no racial motivation attendant to it. The same analysis applies here, substituting the word "sexual" for "racial."  The cases cited by Defendant at page 28 of its brief suffer from the failure to consider the effect of the accumulation of all of the conduct complained of by Plaintiff together and not individually and out of context.

F 3d 710, 717 (3rd Cir. 1997).[5]  In *Christine Hawk v. Americold Logistics, LLC*, 2003 U.S. Dist. LEXIS 3445 (March 6, 2003, E.D. Penn.), the court noted evidence in the record that could create a genuine issue of material fact.  This evidence consisted of a statement by one of the supervisors who commented about the harasser - - "that's the way Jack is."  Id.  Similarly, when Plaintiff complained to Touchstone about Villalobos' sexually inappropriate conduct, Touchstone responded that Plaintiff should not take him seriously "because that is the way he is."[6]  PAE 149.  See further Macedo's comment when she overheard Villalobos make a nasty comment to Plaintiff on January 10, 2006. Macedo laughed and said to Plaintiff that she should go with him and have a good time. C/F at par. 14. When Plaintiff reported this incident to Touchstone she was directed to keep her mouth closed.  Id.

The evidence as discussed above under Sections A , B & C  meet Plaintiff's threshold showing that she was subjected to severe and/or pervasive harassment which created a hostile work environment under either theory of liability because she suffered tangible employment actions.  At the very least the material facts are in dispute.

**D.  Defendant Had Actual Notice That Plaintiff Was Being Harassed.**

As has been argued by Plaintiff at pages 7 - 9 of  her Brief In Support of Plaintiff's

---

[5]  See *Cortes v. Maxus Exploration Co.*, 977 F. 2d 195 (5th Cir. 1992) (employer's act in placing employee under supervision of supervisor who had previously sexually harassed her, and refusing to taken any remedial measures when she expressed her fears about accepting the transfer, amounted to sexual harassment within meaning of Title VII.

[6]  Similarly, in *Paroline v. Unisys. Corp.*, 879 F. 2d 100 (4th Cir. 1989), vacated in part on other grounds, 900 F.2d 27 (4th Cir. 1999) the Court found the act of a supervisor laughing and jokes about a female employee's sexual harassment claim found by court to be evidence that the employer did not intend to take serious action to investigate or halt the harassment.

Motion For Partial Summary Judgment, Defendant had actual, constructive and imputed knowledge[7] of the sexual harassment suffered by Plaintiff since at the very least May 5, 2006 the day she reported to Morton that Villalobos had groped her and that Macedo was making sexual advances to female subordinates. PAE 27. Contrary to the arguments made by Defendant at pages 15-19, this complaint was sufficient for Plaintiff to be considered to have taken advantage of Defendant's sexual harassment complaint procedure.[8] Plaintiff reported to Morton that she had previously complained to the HR Generalist Rosa about the groping and that it had not stopped. Id. *In McKinnis v. Crescent Guardian, Inc.,* 189 Fed. Appx. 307 (5th Cir. 2006) the Fifth Circuit looking at the totality of the circumstances, held that McKinnis' general assertions that she had been verbally and physically harassed, without providing specific details, were not so conclusory that they failed to create a genuine issue of material fact sufficient to overcome summary judgment on the reporting issue. Similarly, in *Howard v. Winter,* 446 F. 3d 559 (4th Cir. 2006) the Fourth Circuit held that a victim's terse brief report of harassment was considered sufficient to put her employer on notice of at least a potential hostile work environment and its response was inadequate. See also *Valentine v.*

---

[7]See *Williamson v. City of Houston, Texas,* 148 F. 3d 462 (5th Cir. 1998) (The City's policy, as Defendant's policy, provided that Plaintiff could report the harassment to her supervisors or his superior, hence notice could be imputed to Defendant).

[8]Defendant seeks to fault Plaintiff for not volunteering information to Chaffin concerning her groping complaint or of other incidents of harassment by Villalobos. See Defendant's Brief at pages 16-18. Chaffin testified that she did not ask Plaintiff about the groping. Facts, at par. 10. The problem with this argument by Defendant is that Plaintiff had already made her complaint about the groping and other conduct by Macedo to Morton. Chaffin was assigned the job to investigate the matter. It fell to Chaffin to question Plaintiff about the groping incident and all other incidents that she believed to be improper. Chaffin did not do this. The ball was in her court. It also fell to Chaffin to question Villalobos and Macedo and to follow-up on information reported by other witnesses. Here, to she failed. See Facts, at pars.28, 29, 30, 31(did not investigate serious allegations made by Tamara against Macedo); 33 (plaintiff reported to her that she did not get a fair hearing when she went to Rosa); 35 (Chaffin admitted not asking Torres if she ever witnessed Villalobos and Macedo hugging and kissing women in the workplace); 26 (Chaffin testified that she did not investigate Plaintiff's complaint that she was suspended for information reported concerning the Tamara incident); 39 (Chaffin did not act on her own belief that consenting employees hugging and kissing was inappropriate). Without doing any of this Chaffin's conclusions and her report did nothing but protect Defendant and provides no defense here.

*City of Chicago,* 452 F. 3d 670 (7th Cir. 2006).

When an employer has a clear and published policy that outlines the procedures an employee must follow to report suspected harassment and the complaining party follows the procedures, actual notice is established. *Breda v. Wolf Camera & Video,* 222 F. 3d 886, 889 (11th Cir. 2000).

**E.  Plaintiff Has Established That She Suffered Tangible Employment Actions.**

> **1.  The Summary Judgment Evidence Establishes That Both Macedo and Villalobos Had Authority Over Her Daily Work Assignments and Work Environment.**

Because Plaintiff did suffer a tangible employment actions e.g., her suspension and termination, Defendant is not entitled to the Ellerth/Faragher affirmative defense, as a matter of law. Defendant concedes that both Macedo and Villalobos were Plaintiff's supervisors for purposes of it's motion,  so Plaintiff will not elaborate further other than to point to record evidence that shows that both of these individuals can be considered supervisors with immediate or successively higher authority over Plaintiff's daily work assignments and work environment.  Facts, at pars. 6, 21, 22, 23, 24, 25, 35 ("Villalobos came and went as he pleased"), 63 (Villalobos had authority to assign workers), 64 (Macedo directed Plaintiff's daily work assignments); Macedo left in charge on January 9, 2008.  (C/F at par. 34).   *See Watts v. Kroger Co.,* 170 F. 3d 505, 509 (5th Cir. 1999); *Rogers v. American Heritage Life Insurance Co.,* 2005 WL 1017808 (N. D. Tex. April 28, 2005) (District Court noted that a *quid pro quo* claim could rest on an alleged harasser's authority to influence an adverse employment decision).   The applicable authorities do not require that a supervisor have ultimate authority to discharge to qualify as an employer so long as the supervisor has significant input into personnel decisions. *See Ellerth, 118 S.Ct.  at 2269.  See further Reinhold*

*v. Commonwealth of Virginia*, 135 F. 3d 920, 934 (4th Cir. 1998) (supervisor had authority to alter the Plaintiff's work assignments and shift responsibilities, sufficient for jury determination on Title VII liability). Here Plaintiff's Final Warning and termination were initiated by Macedo and Villalobos. The investigations allegedly conducted by Defendant of these underlying complaints, lacked independence, thoroughness and were not conducted in a good faith effort to determine the truth such that it can be said that as a matter of law the chain of influence was broken by an independent higher level decision-makers. Here, Chaffin, Felton and Cheshire were merely the cat's paw for the offenders. See Brief In Support of Motion For Partial Summary Judgment at pages 10-17.

### 2. Causal Connection To Tangible Employment Action Established.

### a. The Termination.

A strong inference of discrimination will arise whenever a harassing supervisor undertakes or has significant input into a tangible employment action affecting the victim because it can be assumed that the harasser ". . . could not act as an objective, non-discriminatory decision-maker with respect to the plaintiff." *See Llampallas v. Mini-Circuit Lab. Inc.*, 163 F. 3d 1236, 1247 (11th Cir. 1998). See also EEOC Enforcement Guidance: Vicarious Employer Liability For Unlawful Harassment by Supervisors § IV C (6/18/99). The link between[9] Macedo[10] (suspension) and

---

[9]This argument is even more compelling when the Court considers all of the complaints made by Plaintiff to Touchstone and Rosa, which they ignored. See C/F at pars. 9 - 31. On every occasion supervisors, managers and HR personnel, sided with Macedo and Villalobos from 2005 through January 21, 2008. Never were either of them formally reprimanded for their conduct.

[10]The same rationale applies to the three-day suspension resulting from Plaintiff reporting inappropriate conduct about Macedo to Touchstone and Rosa on June 12, 2007. PAE 28. Macedo then made counter-allegations against Plaintiff, which Touchstone acted on. PAE 3 - 4, 27. The weight of the evidence shows that Plaintiff's complaints about Macedo's inappropriate conduct were not false or unsupported. Sharon Alonzo, Gabriela Olivas, Benjamin Zimmer all confirmed observing the same or similar conduct by Macedo. In fact, Touchstone's own notes confirm that she was independently aware of the problems caused by Macedo's inappropriate conduct on the production

Villalobos's conduct and the Plaintiff's termination is established by evidence that they both had

significant input that led to the decision to cause tangible employment actions to Plaintiff even if

they were not the ultimate decision makers. *See Gee v. Principi,* 289 F. 3d 342 (5th Cir. 2002),

*Russell v. McKinney Hosp. Venture,* 235 F. 3d 219 (5th Cir. 2000), and *Long v. Eastfield College,*

88 F.3d 300 (5th Cir. 1996).[11] *See further Shager v. Upjphn Co.,* 91 F.2d 398, 405 (7th Cir. 1990)

(noting that a committee rather than the supervisor fired Plaintiff, but the employer was still held

liable because committee functions as supervisor's "cat's paw." Accord *Porter v. California*

*Department of Corrections,* 383 F. 3d 1018, 1025 (9th Cir. 2004).

The evidence here establishes the local Human Resources person (Rosa) and Plaintiff's

supervisors (Touchstone and Williams) and Lead Coordinator (Macedo), and her upper level

manager (Rick Felton) functioned as Macedo's and Villalobos' cat's paw. The evidence shows that

Plaintiff reported to Rosa and Touchstone the unlawful conduct of Villalobos and Macedo on May

---

line. See PAE 3 (THE NOTE").

[11]There was no real independent investigation conducted to eliminate the taint. As pointed out in Plaintiff's Brief In Support of Motion For Partial Summary Judgment, at pages 9 - 13, there was no real effort made by Defendant's HR personnel or its managers, to determine the truth of Plaintiff's allegations against Macedo and Villalobos, yet they accepted at face value their complaints against Plaintiff. Moreover, the person who conducted the final investigation that led to Plaintiff's termination (Rosa), had a history of animosity toward Plaintiff which is reflected in her one-sided and blatant false reporting of the facts. PRAE 207, 208, 210-212. For example, the written reprimand of June 18, 2007 resulted from a complaint against Plaintiff by Macedo. PAE 28. The paging incident for which Plaintiff was given a final warning, on January 9, 2008 was initiated by Macedo. PAE 172( c ) The entire incident was contrived by Macedo who admitted that she could have walked over to the Prize department and located Plaintiff and asked her to come and help out. See C/F at par. 34.. Moreover, Rosa falsely reported that all the employees in the Prize Department acknowledged having heard the page, when numerous employees actually said that they did not hear the page and that the paging system is difficult to understand. PAE 175 - 176. The same type of sham investigation occurred when Villalobos complained that Plaintiff had threatened him. PAE 172(b). The only documented evidence obtained by Defendant shows that Iris Torres said she was going to wear black. C/F at par. 39. No one reported that they heard Plaintiff threaten Villalobos. PRAE 210-212. This complaint came the day before Plaintiff went to Joanna Cheshire to complain of the unwarranted reprimand for the paging incident, and of Villalobos' threat on January 9, 2008.

**Plaintiff's Response Brief In Opposition To Defendant's Motion For Summary Judgment - Page 18**

1, 2006, and several months earlier.[12] PAE 1 - 2, 21 & 27. Rosa did not document the complaint; did nothing about the complaint; did not report this complaint to the Director of HR and did not seek her involvement in investigating this complaint.[13] When Macedo allegedly complained that Plaintiff was spreading false rumors about her in June of 2007, Rosa immediately contacted Rodriguez, the Corporate HR Director. PAE 30. Rodriguez immediately initiated a "so-called" investigation that led to Plaintiff being disciplined on June 18, 2007. PAE 28.[14] When Macedo complained that Plaintiff had failed to respond to a page on January 9, 2008, Rosa, Rodriguez and Felton immediately stepped in, conducted a one-sided, biased investigation, and issued Plaintiff a Final Warning on the same day. PAE 172 ( c ). On the same day, Plaintiff complained to her supervisor, Craig Williams ("Williams") that Villalobos had threatened her and placed her in fear for her safety. PRAE 36. Williams responded that he was to busy to listen to her. Defendant claims that Rosa investigated this complaint but the record shows she had a bias against Plaintiff. PAE 23   In her report the only

---

[12]The same thing can be said about the report made by Tamara that Macedo had threatened harm to Plaintiff. PAE 21, Facts at par. 12. Same with Plaintiff's complaints to Chaffin that she feared making more complaints. Facts, Par. 16. Chaffin failed to investigate the report made by Sharon Alonzo that Touchstone will hold things against you and that she did not want to hear about the negative stuff. Facts, at par. 26. Chaffin testified that she did not investigate the complaint by Plaintiff that she was suspended for reporting the sexual advances by Macedo of subordinates and the resulting favoritism in the workplace. Facts, at par. 31 & 33. Chaffin did not investigate Plaintiff's complaint that she believed that she did not get a fair hearing when she made a complaint of harassment to the local HR Generalist, Rosa. Facts, at par. 33. Chaffin testified that she did not investigate Plaintiff's report that Touchstone threatened them if they made complaints because she did not want to hear complaints. Facts, at par. 33.

[13]This general practice of the local HR person and supervisors, of failing to report disruptive issues involving Macedo to Corporate HR is evidenced by the fact that Touchstone did not deem it appropriate to report the threatening note found on Tamara's car, nor of the fact that Tamara had reported to Rosa that she feared that Macedo would cause harm to Plaintiff because of her jealousy.   See PAE 21 &3 (lengthy discussion documented by Touchstone about the note, that was not reported to HR until Plaintiff reported its existence). Plaintiff was reprimanded the following day.

[14]Candie Rodriguez came in to do this investigation and interviewed Plaintiff. C/F at par. 50. Plaintiff complained that the suspension was nothing more than an act of reprisal because she had reported Macedo's sexual advances and because she continued to complained about Villalobos. C/F at pars. 48-51. Rodriguez then claimed to have investigated both of these complaints. Id. Rodriguez however, had no clue that Chaffin had investigated the same issues a year earlier and had written a report. C/F at par. 53. This report contradicted much of the evidence she claims to have gathered. PAE 21 - 26.

Plaintiff's Response Brief In Opposition To Defendant's Motion For Summary Judgment - Page 19

mention of Plaintiff complaint is one short paragraph containing nothing more than conclusions. PAE 177. No record of interviews or witness statements was produced. Id. When Villalobos complained to Rosa about Plaintiff's alleged threat on January 11, 2008, Rosa immediately consulted Rick Felton, Vice President and Rodriguez. PAE 157-158, 172 (b). Plaintiff then complained to Joanna Cheshire ("Cheshire") who referred the complaint to Rosa for investigation. C/F at par. 37. Cheshire's notes make clear that Plaintiff complained of the continuing practice by Macedo of affording preferential treatment to employees who afforded her sexual favors.[15] See PAE 173. As a result Plaintiff was terminated. PAE 172 (b). Despite the record of complaints made by Plaintiff to numerous officials, including Touchstone, Rosa, Morton, Chaffin and Cheshire, Plaintiff was still being forced to work for Macedo and Villalobos through the date of her termination on January 21, 2008. Defendant knew there was friction between Plaintiff and Villalobos. Facts, at par. 68. Defendant knew or should have known that there was friction between Plaintiff and Macedo. Defendant also knew or should have known that there was friction between Plaintiff and Rosa, who conducted the final investigation that led to Plaintiff's termination. Plaintiff's termination was a tangible employment action which deprives Defendant of an affirmative defense.

### b. The Suspension.

The summary judgment evidence shows that on May 1, 2006 Plaintiff reported to Touchstone and Rosa that Macedo was engaged in sexually inappropriate conduct in the workplace

---

[15]Defendant argues throughout its brief that the only thing that Plaintiff complained about was that Macedo was affording preferential treatment to her friends which was not a complaint of sexual harassment. Brief at page 14. This argument is misleading. The one person who did document details of what Plaintiff was complaining about was Steve Morton on May 5, 2006. PAE 27; PRAE 220 - 226. His notes make it clear that Plaintiff was specifically complaining of Macedo's sexual practices. Morton wrote "Lupe accused Anna of making sexual advances toward other female employees. PAE 27. She said that this has occurred over an extended period of time (the impression I got was a number of years), that she displays favoritism to those women who respond positively to these advances, and she criticizes and makes thing difficult for those who don't. Lupe said that she falls into the second group." PAE 27.

**Plaintiff's Response Brief In Opposition To Defendant's Motion For Summary Judgment - Page 20**

over an extended period of time.[16]  During this meeting Plaintiff disclosed to Rosa the existence of

a threatening note that had been given to Touchstone by Macedo but that had not been reported to

Rosa.  PAE 3.  It was not until after Plaintiff disclosed the existence of the note that Rosa asked

Touchstone to disclose it.  PAE 3. The undisputed evidence shows that Plaintiff was suspended for

three days because she reported to Human Resources that Macedo was pressuring Tamara into a

sexual relationship and that Tamara was afraid.   PAE 3. Touchstone wrote in her notes on May 1,

2006 concerning the threatening note found on Tamara's car windshield.  PAE 3.

> "I had a temporary employee name Tamara that we brought to the
> line from the Director line for the first packing station. **For some
> reason** some of the employees decided that Ana liked this girl and
> was showing her special treatment because she was placed in the
> packaging position instead of an order filler.  So every time that
> Ana would walk down the line they were whistling, and making
> lude noises.  Ana told them to knock it off or she was going to
> bring them to the office.  **That night when the temp went home**
> She had a note on her car.  The note was written in Spanish, but the
> translation said, **"You had better quit this job.  You better leave
> Ana alone because she belongs to me or else something bad is
> going to happen to you."**
>
> **Tamara called Ana at home and told her that she wasn't coming
> to work anymore because someone had placed a note on her car
> And she was scared, and she didn't need the aggravation.**[17]

Touchstone then states in her notes she met with Rosa and Ana and explained what

Tamara had told Ana.  The May 3, 2006 entry states that Mary Lou and Touchstone met with

Plaintiff this morning and informed her that she would be suspended for three days starting on May

---

[16]This is precisely the same complaint Plaintiff made to Steve Morton on May 5, 2006.  PAE 27.

[17]At the very least this evidence recorded by Touchstone establishes that Plaintiff was not giving "misleading" and "inaccurate information" when she was disciplined for reporting Macedo's conduct on June 18, 2007.  PAE 28. It also shows that Macedo used her position to intimidate employees who disapproved of her practice of favoring girls that submitted to her sexual advances.

3, 2006. PAE 4. It is undisputed that the incident involving the note revealed the existence of a seriously hostile work environment created by Macedo's sexual advances toward female employees as Plaintiff reported to both Touchstone, Rosa and eventually to Morton on May 5, 2006. Id.

**F.   Plaintiff's Hostile Work Environment Claim.**

### 1.   Claim As to Macedo's Conduct Is Not Barred.

Defendant argues at page 24 of its brief, that because Plaintiff did not mention Macedo in her EEOC charge, the EEOC had no reason to investigate another supervisor. Consequently, Defendant argues that she is precluded from pursuing her hostile work environment claim in this action.[18] Defendant's argument has no merit, and the cases cited by Defendant do not support it's argument. The issue here does not turn on whether Plaintiff disclosed the name of another person who was harassing her. The issue turns on whether the sexual harassment claim is like and related to the hostile work environment claim because the latter potentially grows out the former. Both claims are based in sexual harassment. The investigation of a sexual hostile work environment claim can reasonably grow out of an investigation of a sexual harassment charge against a fellow employee. *See Stein v. Chessie Computer Servs.,* 63 FEP Cases 948, 949-50 (D. Md. 1993). The charge does not specifically identify who that employee was. Sexual harassment allegations are like and related to a sexually hostile work environment. It is the basis of the charge that is controlling. If the claim is like and related then it can be expected to reasonably grow out of an investigation of the basis of the initial charge. As noted below, the Fifth Circuit has twice indicated that a Title VII plaintiff may sue on all issues rooted in the basis specified in the charge, i.e., all such issues are

---

[18] In *Pacheco v. Mineta,* 448 F. 3d 783, 788 (5th Cir. 2006) the Fifth Circuit held that it is unclear in this circuit whether exhaustion of administrative remedies in a Title VII suit is a jurisdictional requirement or merely a prerequisite to suit subject to waiver and estoppel. The issue is not a jurisdictional one as a matter of law, and Defendant does claim surprise, as Plaintiff had repeatedly complained of Macedo's conduct.

sufficiently "like and related" to those specified in the charge.   The example given by Defendant is inapposite, because the case law has long held that a retaliation charge is not like and related to an underlying claim of discrimination.

It is undisputed that Plaintiff did file a charge of discrimination with the EEOC on May 26, 2008.   The cases cited by Defendant do not hold that  EEOC could not have investigated  a hostile work environment claim.  It is entirely conceivable that  an investigation of a hostile work environment claim can arise through the investigation of a charge of harassment naming one person. A fact-intensive review of the factual allegations contained within Plaintiff's  EEOC charge, as required by  Fifth Circuit law,  establishes that Plaintiff  did exhaust her administrative remedies on her hostile work environment claim.  Defendant's conclusion does not preclude the reality, that that in the instant case, the EEOC reasonably could have expanded its investigation to include the hostile work environment issue since it has a like and related basis..

As a general proposition, it is well established that the scope of an EEOC charge should be liberally construed for litigation purposes. *Sanchez v. Standard Brands, Inc.,* 431 F. 2d 455, 465 (5th Cir. 1970).[19]  A court in reviewing the scope of an EEOC charge should do so somewhat broadly, and not solely by the scope of the EEOC charge itself, but by the scope of the EEOC investigation which "can reasonably be expected to grow out of the charge of discrimination." Id. at 466.  Based upon this principle, a Title VII suit may be based, not only upon the specific complaints made by the employee's initial EEOC charge, but also upon **any kind of discrimination like or related to the charge's allegations**, limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination. *Fellows v. Universal Restaurants, Inc.,*

---

[19]See also *Gamble v. Birmingham Southern Railroad*, 514 F. 2d 678, 10 FEP 1148 (5th Cir. 1975).

**Plaintiff's Response Brief In Opposition To Defendant's Motion For Summary Judgment - Page 23**

710 F. 2d 447, 451 (5th Cir 1983). The Court will need to engage in a fact-intensive analysis of the statement given by plaintiff in the administrative charge, and look slightly beyond the four corners, to its substance rather than its label. *Id.*  Thus, it follows that the EEOC would reasonably have investigated the hostile work environment claim as part and parcel of Plaintiff's underlying harassment claim. See *Pacheco* cited at footnote 16 supra, which discusses the Fifth Circuit's view on how comprehensive this inquiry should be. It further recognizes and accepts that the Court must make reasonable deductions and draw reasonable inferences on how the EEOC may have conducted its investigation. This showing sufficiently satisfies his administrative exhaustion requirements.

### 2. Plaintiff's Hostile Work Environment Claim Is Not Untimely.

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 20003-2(a)(1). The Fifth Circuit has recognized that an employee can establish a violation of Title VII by demonstrating that his employer created an offensive work environment. *See Rogers v. EEOC*, 454 F.2d 234 (5th Cir. 1971), *cert. den'd*, 406 U.S. 957, 92 S. Ct. 2058 (1972). The Supreme Court has explained that "[w]hen the workplace is permeated with **discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.**" *Harris v. Forklift Systems, Inc.*, 510 U.S.17, 21 (1993).  More recently, in *Burlington Industries, Inc. v. Ellerth,* the Supreme Court stated that a hostile work environment claim "requires a showing of severe or pervasive conduct." 524 U.S. 742, 754, 118 S. Ct. 2257, 2265 (1998). In order to make a prima facie case of a hostile work environment, a plaintiff must

prove "(1) her membership in a protected class, (2) she was subject to sexual [ ] harassment, (3) the harassment was based on sex [ ], (4) the harassment affected a term, condition, or privilege of her employment, and (5) Defendant knew or should have known about the harassment, but failed to take prompt remedial action. " *Watts v. Kroger Co.,* 170 F. 3d 505, 509 (5th Cir. 1999).

The Supreme Court has repeatedly emphasized that alleged harassment is actionable only if it is "so 'severe or pervasive' as to 'alter the conditions of [the complainant's] employment and create an abusive working environment.'" *Faragher,* 524 U.S. at 786. (Citations omitted). To show an alleged hostile work environment is sufficiently objectionable, a complainant must prove that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so."[20]   *Id.* at 787.

Determining "whether an environment is sufficiently hostile or abusive" is to be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* at 787-88 (quoting *Harris,* 510 U.S. at 23). Thus, "'simple teasing,' offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of

---

[20]The one constant variable throughout the four year period of harassment was Plaintiff's constant complaining of the conduct of both Villalobos and Macedo and that both contributed to the hostile work environment. That the hostile work environment interfered with her work performance is established both by the constant efforts by both Macedo and Villalobos to get Plaintiff disciplined and terminated, which they eventually accomplished. Beyond this, Plaintiff testified that she became depressed and hopeless when her complaints fell on deaf ears and the harassment continued. *See* C/F at par. 21. When Plaintiff complained to Touchstone and Rosa she was accused of lying and reprimanded. When she complained to Rick Felton he accused her of lying. C/F 23. When she complained to Morton, he listened and documented her complaint, but then passed it off to Susan Chaffin. PAE 27. Chaffin went through the motions of conducting an investigation, but her investigation was superficial and results oriented. Chaffin failed to question both of the alleged offenders; failed to investigate Plaintiff's complaints that both Touchstone and Rosa were retaliating against her for reporting the harassment; failed to investigate serious allegations that Macedo was using his authority to pressure female subordinates into sexual relationships and that this was causing disruption in the workplace. PAE 2; Facts, at pars. 3; 21, 22, 23 - 24.

employment.'" *Faragher*, 524 U.S. at 788. (Citations omitted). Requiring that standards at which alleged harassment becomes actionable is "sufficiently demanding" ensures that anti-discrimination statutes do not become "general civility code[s]" and the courts will "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [race] related jokes, and occasional teasing.'" *Id.* (Citations omitted); accord *Clark Co. School Dist. v. Breeden,* 532 U.S. 268 (2001).

In considering the totality of the circumstances approach, the U.S. Supreme Court recently instructed that a hostile work environment, although comprised of a series of separate acts, constitutes one "unlawful employment practice, " and so long as one act contributing to the claim occurs within the filing period, "the entire time period of the hostile environment may be considered by court for the purposes of determining liability." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). One appeals court has held that "a hostile work environment claim is a single cause of action rather than a sum total of a number of mutually distinct causes of action to be judged each on its own merits." *Vance v. Southern Bell Telephone & Telegraph Co.*, 863 F.2d 1503, 1511 (11th Cir. 1989).

In *Hadad v. American Airlines, Inc.*, 2003 U.S. Dist. LEXIS 1872*9 (N.D. Tex. 2003) the Court described the relevant issue:

> A continuing violation can be brought to protect a series of acts
> that individually may not rise to claims but blend into one single
> unlawful practice. (Citing *Nat'l R. R. Passenger Corp. v. Morgan*).
> . . Plaintiff may bring his title VII claims so long as they are part of
> the same actionable claim. This may include continuing
> violations that are connected by common threads.

The argument by Defendant is premised on conduct that was formerly referred to as *quid pro quo* sexual harassment. While Plaintiff did identify the one incident of what could be considered

*quid pro quo* harassment identified by Defendant at page 25, her hostile work environment claim is premised on the collective and total conduct of Villalobos and Macedo. The case law instructs that this claim must be viewed as a single cause of action, so long as they are part of the same actionable conduct. Plaintiff meets this element by showing that the actionable conduct continued well into the 300 day filing period, and that Macedo contributed to this hostile environment during this period.[21] The Supreme Court has explained that '[w]hen the workplace is permeated with **discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.**" *Harris v. Forklift Systems, Inc.*, 510 U.S.17, 21 (1993). More recently, in *Burlington Industries, Inc. v. Ellerth,* the Supreme Court stated that a hostile work environment claim "requires a showing of severe or pervasive conduct." 524 U.S. 742, 754, 118 S. Ct. 2257, 2265 (1998).

When looked at in this light, it is well established that whether an environment is sufficiently hostile or abusive" is to be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening, whether it is discriminatory intimidation, ridicule, insult or humiliating, or a mere offensive utterance'; and whether it unreasonably interferes with an employee's work performance. "[22] Here, the events of

---

[21]Plaintiff alleged in her amended complaint that Macedo's conduct continued until her termination on January 21, 2008. [Doc. 14-2, at par. 29.] Plaintiff alleged that Plaintiff was issued a Final Written Warning on January 9, 2008 based upon a false report made by Macedo. [Doc. 14-2, at Par. 49] On January 11, 2008 Plaintiff complained to Joanna Cheshire, Vice President that she had been wrongfully disciplined as a result of a false report by Macedo and that Macedo was showing favoritism to her girlfriends. PAE 173. Plaintiff also reported that the supervisor always sides with Macedo. PAE 173. Plaintiff also reported being threatened by Villalobos on January 9, 2008. PRAE 122-123.

[22]Contrary to Defendant's arguments, these are the proper factors to be considered in the context of this argument, and not on when the last time that Macedo sexually propositioned Plaintiff was. *See Fairbrother v. Morrison,* 412 F.3d 39 (2nd Cir. 2005).

January, 2008 show that Plaintiff's working conditions were severely abusive and intimidating.

### G. Defendant Fails to Meet the First Prong off Affirmative Defense.

Without looking at Defendant's argument concerning its investigation, Plaintiff submits that the summary judgment evidence establishes that Defendant can not meet this burden of proof on the first prong of the defense. In *Faragher v. City of Boca Raton*, 524 U. S. 775 780-782 (1998), the Supreme Court concluded that where the evidence showed that the City had failed to keep track of complaints against offending supervisors, it was not entitled to raise the affirmative defense. The same conclusion applies here. Without keeping track of complaints of sexual harassment and without keeping track of complaints against offenders, Defendant failed to prevent sexual harassment from occurring and continuing, and thus it cannot meet the first element of the first prong of the defense. Defendant has not established beyond peradventure that took all reasonable steps to prevent sexual harassment from occurring in the first instance.

### H. Defendant's Investigations of Plaintiff's Complaints.

#### 1. Documentation of Investigation or Lack Thereof.

As noted in Plaintiff's Brief In Support of Motion For Partial Summary Judgment, Defendant did not require that complainants make written reports, nor did it keep written records of complaints, no did it keep a centralized record keeping system to keep track of complaints against employees in its far-flung facilities. PRAE 211-216. The same holds true with respect to Defendant's practice of not requiring witness to give written and signed statements. Defendant dos not maintain its original notes of witness interviews. In fact, Defendant had no policy or procedure in place to maintain notes or records generated during the course of an interview. The undisputed evidence shows that Plaintiff made at least four complaints of harassment between 2005 and the January 21, 2008, the date of her

termination.[23] These are the May 5, 2006 complaint to Steve Morton (PAE 27); the May 10, 2006 complaint to Chaffin (PAE 21-26) the complaint investigated by Candie Rodriguez in June, 2007 and the January 11, 2008 complaint to Joanna Cheshire. PAE 173. The Morton complaint, though well documented, was turned over to Chaffin for investigation. The Chaffin investigation is well documented but the investigation fell short sufficiently that it can not be considered reasonably calculated to prevent harassment or stop harassment, since the two offenders were not interviewed, and the bulk of the serious allegations made by Plaintiff against Macedo and Villalobos were not investigated. The Rodriguez investigation suffered from the lack of continuity caused by the failure of Defendant to keep track of the complaints against Villalobos and Macedo and thus it to can not be considered to be reasonably calculated to end harassment. This investigation also suffers from missing documentation. Rodriguez testified that she interviewed Sharon Alonzo, and took notes of her interview. The notes however, were not produced. Their absences cast further shadows on the validity of her conclusions since Alonzo has provided conflicting information, which Defendant seeks to take advantage of in its brief.[24]

### a. Inadequate Investigations.

As demonstrated below Defendant's alleged investigations were inadequate and as a result Defendant failed to enforce it's policy and the harassment continued. *See McInnis v. Fairfield Communities, Inc.,* 458 F. 3d 1129 (10th Cir. 2006) (rejecting employer's affirmative defense where employer failed to enforce or make good faith efforts to enforce its policies where employee reported the harassment to Senior Vice President, and Regional Human Resources

---

[23]Actually, if the Court accepts the May 1, 2006 complaint about Macedo and Villalobos made to Touchstone and Rosa, that is documented in Touchstones' notes, there were actually five un-controverted complaints by Plaintiff.

[24]See footnote 94.

**Plaintiff's Response Brief In Opposition To Defendant's Motion For Summary Judgment - Page 29**

Director, all of whom failed to take any action to remedy the situation). See also *Clark v. United Parcel Service, Inc.,* 400 F.3d 341 96th Cir. 2005); *Beard v. Flying J Inc.,* 266 F. 3d 792 (8th Cir. 2001) (Employer's cursory handling of employee's complaint and issued only a written warning).

### 2. Chaffin's Investigation of Plaintiff's 2006 Complaint.

Plaintiff incorporates by this reference her evidence and arguments as identified at pages 7 top of page 12 concerning the inadequacy and fallacies of Chaffin's alleged Investigation and why it fails to provide Defendant an affirmative defense in this case.[25] Suffice it to say that it was a sham investigation which did not search out the truth of the allegations made by Plaintiff to both Morton and Chaffin[26]. It is quite obvious why Chaffin's investigation failed to uncover any evidence to substantiate Plaintiff's sexual harassment complaint against Villalobos and hostile work environment claim against Macedo.[27] See *Watson v. Blue Circle, Inc.,* 324 F. 3d 1252 (11th Cir. 2003) (company did not take complaints seriously and conducted superficial investigation of serious

---

[25]As previously noted Chaffin testified that she did not interview either Macedo or Villalobos during the course of her investigation. Facts, at pars. 29, 30 & 72. Morton, testified that Plaintiff had the right under Defendant's policy to complain about same-sex sexual activity in the workplace if she found it to be offensive. PRAE 231-232. Morton testified that Chaffin had the authority to take action to stop the harassment. PRAE 232 - 233. Morton believed that the threatening note received by Tamara was going to be investigated by Chaffin. PRAE 234. Morton testified that he believed that Villalobos should have been interviewed concerning Plaintiff's complaints against him. PRAE 235 - 236. Morton took Plaintiff's complaints seriously and believed that Chaffin would investigate her complaints thoroughly and competently. PRAE 238.

[26]The facts in this case show that after interviewing Plaintiff concerning her allegations against both Villalobos and Macedo, Chaffin did not interview or question either Villalobos or Macedo about Plaintiff's allegations. *See Defendant's Admission, PAE 181 (Request Number 11).* In *Broom v. Regal Tube Co.,* 881 F. 2d 412, 421 (7th Cir. 1989) the court found the investigation to be inadequate where no follow-up interview was conducted with complainant after the interview of the alleged harasser). In *Marsh v. Digital Equip. Corp.,* 675 F. Supp. 1186, 1191-97 (D. Ariz. 1987) (inadequate investigation because no attempt to corroborate or disprove allegations and no follow-up). Even where the company talked to the alleged harasser one time by phone, and then dropped the matter based upon his denial, was was held not to be a sufficient investigation. *See Heelan v. Johns-Mansville Corp.,* 451 F. Supp. 1382, 1387-88 (D. Colo. 1978).

[27]See *Wade v. Minyards Food Stores,* No. 3:03-1403-B, 2005 U.S. Dist. Lexis 4973 (N. D. Tex. Mar. 25, 2005)(finding doubt as to the reasonableness and swiftness of the company's investigation where the investigator (1) failed to interview the witnesses Plaintiff claims could collaborate her allegation, (2) told the plaintiff during a meeting to discuss her insubordination that her harassment allegations seemed "fabricated."

allegations made by victim).[28] Alonzo reported to Chaffin that she had seen Macedo in a bathroom stall with a temporary worker. PAE. 25. Rodriguez testified that Alonzo reported that she had never seen Macedo engaged in inappropriate conduct, but admitted that she never asked her if she had seen Macedo in the bathroom stall. However, Rodriguez's notes could not be produced. The missing notes requires an adverse inference that Alonzo reported the same conduct about Macedo to Rodriguez as she had reported to Chaffin. Macedo herself denied ever being in a bathroom stall with a female coworker.

### 3. The Rodriguez's Investigation of the 2007 Complaint by Macedo.

The insufficiency and lack of good faith involved in this asserted investigation has been addressed by Plaintiff In Plaintiff's Brief In Support of Motion For Partials Summary Judgment, at page 12. This alleged complaint came on the heals of Plaintiff's report to Human Resources that she had observed Macedo engaged in inappropriate conduct of a sexual nature with a subordinate. It was converted into a complaint by Macedo that Plaintiff was spreading rumors about her. Rodriguez was called in to investigate Macedo's complaint. It was only after interviewing Plaintiff that she learned of her prior complaints against both Macedo and Villalobos.

Rodriguez proceeded with her investigation in the dark. She had no knowledge of Chaffin's 2006 investigation of the same issues, nor was she aware of Chaffin's report. PAE 21-26. Rodriguez had no knowledge that Plaintiff had reported that Villalobos was sexually harassing and

---

[28]Plaintiff reported to Morton and Chaffin that Macedo was affording preferential treatment in work assignments to those females who agreed to submit to her sexual advances. Coworkers confirmed that Macedo afforded preferential treatment to her "friends." Defendant's investigation shows that it did not question employees who acknowledged that Macedo afforded preferential treatment to her friends i.e., whether providing sexual favors was involved. Defendant concluded simply that the evidence showed that some employees did complain of preferential treatment but did not say it was sexually related. This is analogous to the Blue Circle case where supervisor merely addressed whether "horseplay" was involved and not did not address it as a serious sexual harassment issue as alleged by victim.

abusing her back in May, 2006, and previously, and therefore had motive to make false charges against her. Rodriguez had no knowledge that Plaintiff had reported to Steve Morton on May 5, 2006 that Macedo was making sexual advances toward female subordinates and rewarded those who cooperated and punished those that did not. See PAE 3, (May 1, 2006 entry that begins on PAE 2). See discussion under heading of "THE NOTE". The note confirms that Touchstone was aware of the problem created when Macedo dated female employees she supervised; it also shows that Macedo used her authority to intimidate employees who did not keep quiet about her dating practices. *See f. n. 17 supra*. More importantly, the note confirms that Macedo's dating practices were causing disruption in the workplace due to jealousy among the various female employees she was dating. PAE 27. None of this was investigated by Rodriguez because she was only interested in disciplining Plaintiff. All of this evidence confirmed what Plaintiff had reported to Steve Morton on May 5, 2006. That Macedo was making sexual advances toward female subordinates, favoring those who cooperated and disfavoring those that did not. See PAE 27. Moreover, Rodriguez did not preserve all of her notes of witness interviews and did not interview all potential witnesses, including those identified by Plaintiff. For example, Sharon Alonzo allegedly reported to Rodriguez that she had not observed Macedo engaged in inappropriate conduct with female employees. Though Rodriguez did not ask her about whether or not she had been in a bathroom stall with a female temporary employee. Alonzo had reported to Chaffin that she had observed Macedo in a bathroom stall with a female temporary worker. At her deposition, Alonzo added that she observed Macedo and a temporary worker coming out of a bathroom stall and it appears that the temp workers eyes were red. Macedo, on the other hand denied that she had ever been in a bathroom stall with a temporary worker.

### 4. The Investigation of Macedo's and Villalobos' Complaints in 2008.

### a. The Failure to Respond to Page Incident on January 9, 2008.

The investigation of Macedo's complaint that Plaintiff did not respond to her page was a sham.[29] First, Rosa was not a neutral investigator because of her past difficulties with Plaintiff. Plaintiff had accused her of being a racist, which to Plaintiff meant she was being unfair toward Plaintiff and refused to listen to her complaints; refused to take any action stop Macedo and Villalobos and instead had concluded that Plaintiff had reported false and misleading information about Macedo.[30] Defendant produced no notes of any interviews taken by Rosa. The only related

---

[29]First of all, the complaint itself was a sham because Macedo admitted that she could have walked over to the Prize department located Plaintiff and asked her to come and help. C/F at par. 34; PRAE 202. It has never been disputed that Plaintiff immediately reported to the assignment when Rosa located her and asked her to help. Secondly, Rosa concluded in her report that Plaintiff had deliberately failed to respond to the page. PAE 176. The Final Warning was issued on January 9, 2008, the day the complaint was made. PAE 172(c) However, the investigation and report was not completed until January 17, 2008 well over a week after the Final Warning was issued. PAE 175. In her report Rosa reported that all coworkers interviewed **thus far** (January 17, 2008), had acknowledged that they had heard the page. PAE 175. **This is a false statement.** Rosa's own report documents that many (9) employees reported that they had not heard the page, and that the paging system was difficult to understand. PAE 176. When you consider that both Plaintiff and Iris Torres and seven other workers reported that they did not hear the page and that the paging system was hard to understand, Rosa' report is a misrepresentation of the facts. Most telling is the fact that Plaintiff had already been issued the Final Warning a week earlier for failing to respond to the page, that she said she did not hear. This Final Warning later became a part of the reason Plaintiff was terminated. If Plaintiff did not hear the page, as the evidence suggests, it makes it highly unlikely that she made a comment to Conard that she was not going to respond. That Defendant would rely on such hearsay by Conard, without ever confronting Plaintiff about what she said, shows the extent to which Rosa was looking to find fault. This evidence supported Plaintiff's and Iris Torres' response that they had not heard the page. It was simply self-serving to conclude that Plaintiff had deliberately refused to respond to the page. With respect to the alleged statement by Martha Conard, that Plaintiff had stated to her that she heard the page, and said she was going ro respond, there is no such written statement by Conard, no notes by Rosa, only Rosa's report which was not provided to Plaintiff until July 1, 2009, depriving Plaintiff of the opportunity to depose Ms. Conard concerning her allegation which Plaintiff flatly denies. See PAE 174. For this reason Plaintiff will move to strike this statement by Conard. Moreover, since Torres failed to appear at her deposition and it was not taken until July 16, 2008, Plaintiff will supplement her deposition testimony, after seeking leave of court. At her deposition Torres testified that she did not hear the page. She further testified that she never heard Plaintiff make any kind of threat toward Villalobos but has admitted that she said she was going to wear black. She refused to answer whether or not it was true that Villalobos had grabbed her hand and put her fingers into his mouth, as reported by Olivas. Facts, at par. 19.

[30]The record shows that the June 18, 2007 reprimand on its face states that Plaintiff gave false and misleading information to Human Resources during a meeting on June 12, 2007. PAE 28. However, all of the evidence that has come to light about Macedo's practices of dating female employees, and favoring those who cooperated with her sexual advances, shows that Plaintiff did not give false and misleading information about Macedo's sexual advances and inappropriate conduct in the workplace. A reasonable conclusion to be drawn from the reprimand is that it was another effort to shut Plaintiff-up.

document produced by Defendant was Rosa's report produced to Plaintiff on July 1, 2009 four days

prior to the discovery cut-off.   More than anything these notes show that Rosa misrepresented the

facts. Rosa reported that all witnessed interviewed had reported hearing the page, when in fact many

had reported not hearing the page and reported difficulty understanding the page. PRAE 175-176.

Rosa's investigation and report was tainted by her own bias against Plaintiff

### b.   Villalobos' Threat Complaint on January 11, 2008.

When Macedo and Villalobos discovered that Plaintiff was again seeking to elevate her

complaints to Joanna Cheshire they conspired to falsely accuse Plaintiff of making a threat against

Villalobos[31].   Villalobos and Macedo had used this same tactic back in 2003, when Macedo wrote

a false report that Villalobos had informed her that Plaintiff had made a threat against both of them.

PRAE 183.   Rosa, Felton, and Cheshire knew or should have known of this false report in 2003 at

the time the report was made in 2008.[32] At her deposition Macedo admitted that it was her writing

and her signature.   She testified however, that she had no basis in fact for writing the note, and did

not know why she wrote the defamatory note because she not aware of any threat reported to her by

Villalobos.   PRAE 180-182.   Here, again the complaint  by Villalobos was given credence by

Rodriguez, Felton and Rosa.   Again, Rosa was given the task of investigating this note.   Rosa

allegedly interviewed witnesses but produced no notes of her interviews.   The only notes that were

---

[31]Plaintiff's report to Joanna Cheshire on January 11, 2008 suffered from the same shortcomings as her report to Steve Morton on May 5, 2006. Morton, a high level Vice-President, passed off her complaint to Susan Chaffin, who fumbled the investigation. Cheshire passed off her complaint to Rosa and Felton. Where Chaffin might have at least been a neutral fact-finder, neither Rosa or Felton were. Rosa's obvious partiality is demonstrated by her downright false reporting of the facts. See footnotes 11 & 28 *supra*. Felton had also demonstrated his partiality during the January 14, 2008 meeting with Plaintiff. See C/F at par. 23. He outrightly accused Plaintiff of lying and of being a "troublemaker." Moreover, in a meeting on June 18, 2007 between Plaintiff, Rodriguez and Felton, they both accused Plaintiff of lying about everything she was saying about Macedo and Villalobos. C/F/ at par. 23.

[32]This is another example of how Defendant's failure to keep track of complaints kept managers in the dark about Macedo and Villalobos' prior false reports against Plaintiff.

**Plaintiff's Response Brief In Opposition To Defendant's Motion For Summary Judgment - Page 34**

produced show that noone reported having heard Plaintiff make any threat against Villalobos. See PRAE 210-212 (no witness reported hearing any threat by Plaintiff in January, 2008. The report by Najarro that a year earlier Plaintiff mention something about harming Villalobos was less then credible. If Najarro considered it to be a serious threat she did not report it at the time. Her effort to tie the comment to the Virginia Tech school shooting also fails because that shooting occurred in April, 2007 and she stated that the comment was made at the time she transferred to the day shift in February, 2007). *See C/F at par. 40.* See discussion below under Pretext. It was a sham complaint and a sham investigation.

## I.   Defendant is Not Entitled to the Ellerth/Faragher Affirmative Defense.

### 1.   Lack of Preventative Measures - First Element of First Prong.

Plaintiff has already established that Defendant knew or should have known that its sexual harassment policy was not working as of January, 2008 when she was terminated. See Plaintiff's Brief In Support of Motion For Partial Summary Judgment, at pages 14 through top of page 18. Though the evidence shows that Defendant had a sexual harassment policy in place, the facts demonstrate that it was vague and ad hoc in its implementation and did not function effectively to eliminate harassment at the Southwestern Distribution Center where Plaintiff was employed. *See Charlotte Lynn Rawlins and Cheryl Jenkins Mathis v. Avco Corporation*, 819 F. 2d 630, 635 (6th Cir. 1987). A troubling aspect of the instant case was also present in the *Avco*. The evidence in this case establishes beyond peradventure that Defendant's supervisors, HR personnel[33] and managers were

---

[33]In *Clark v. United Parcel Service, Inc.*, 400 F. 3d 341 (6th Cir. 2004) the Sixth Circuit held that the employer had not established its defense because under the first prong of the *Ellerth/Faragher* defense employers have an affirmative duty to prevent sexual harassment by supervisors. The Court noted the effectiveness of an employer's sexual harassment policy depends upon the effectiveness of those who are designated to implement it. None of the supervisors who were aware of the harassment took action toward stopping it. Here Defendant's policy placed a duty on all supervisors to report harassment.

not aware as of January 1, 2008, of prior complaints against Villalobos and Macedo, nor were they aware of prior investigations, findings and reports. Because of this they operated in the dark when new complaints were made against the Macedo and Villalobos allowing them to continue harassing Plaintiff and escalating their discriminatory intimidation and abuse. One can only assume that this lack of knowledge or continuity in the enforcement of its sexual harassment policy, resulted because Defendant failed to document prior sexual harassment complaints and investigations and findings, in the employee's personnel file, or some other centralized record keeping system. *See Avco Corporation at* 819 F.2d at 635.

The underlying failure of Defendant's anti sexual harassment policy is its failure to attempt to keep track of conduct of its employees. See Brief In Support of Partial Summary Judgment, at pp. 10-13. Chaffin knew nothing of the prior complaints made against Villalobos when she started her investigation on May 10, 2006. PAE 14 - 15. Rodriguez was not aware of Chaffin's investigation of Villalobos and Macedo when she conducted her investigation in June, 2007. Facts, at pars. 48 - 51 & 53. Rosa was not aware of any complaint of sexual harassment made by Plaintiff against either Villalobos or Macedo when she conducted her investigation in January, 2008. PAE 163. This same record was part of the reason the U. S. Supreme Court in *Faragher v. City of Boca Raton,* 118 S. Ct. 2275, 2279 (1998) concluded that the City was not entitled to rely on the affirmative defense. Merely talking to the harassers about their conduct is not always sufficient to meet the defense, particularly where the harassment is severe as it was in the present case. *See Laughman v. Malnati Organization, Inc.,* 395 F. 3d 404 (7th Cir. 2005). (The constant stream of harassment demonstrated that *Malnati's* sexual harassment policies were not working). The same can be said in the present case as the harassment that Plaintiff endured went on for four years.

Defendant argues that it did take steps to investigate Plaintiff's complaints and that it took remedial action. The facts belie this assertion. At the very least had Defendant separated Plaintiff from the Villalobos and Macedo we would not be here today. Not every response by an employer will be sufficient to discharge its legal duty. Rather, the employer may be liable despite having taken remedial steps if the plaintiff has can establish that the employer's response was not reasonably calculated to halt the harassment. *Waltman v. International Paper Co.,* 875 F. 2d 468, 479 (5th Cir. 1989). Separating Plaintiff from Villalobos and Macedo would have been reasonably calculated to halt the harassment. In considering the issue before this court here, the Fifth Circuit as most circuits, have considered whether the offending behavior in fact ceased. *See Skidmore v. Precision Printing and Packaging, Inc.,* 188 F. 3d 606, 616 (5th Cir. 1999). The undisputed evidence in this case shows that the offending conduct never did stop; rather it escalated to the point that it resulted in Plaintiff's termination. As Plaintiff was frequently reminded by Villalobos, it did not much matter if she continued to complain about his conduct, because he knew that Defendant would do nothing to him. He was absolutely correct making Defendant's sexual harassment policy an absolute sham.

**J. Plaintiff Made Reasonable Efforts To Invoke Defendant's Policy.**

Plaintiff has established that she did attempt to complain about the harassment by Villalobos and the hostile work environment she was subjected to by both Villalobos and Macedo, but that Defendant failed to take timely, reasonable and effective remedial action. See Plaintiff's Brief In Support of Motion For Partial Summary Judgment, at pages 7 through top of page 13.

**K. Under Applicable Authorities Plaintiff Has Stated a Case Of Retaliation.**

**1. Prima Facie Case.**

In her second cause of action Plaintiff alleged that she was terminated for false and

pretextual reasons because she engaged in protected activity when she complained of sexual harassment by Villalobos and because she opposed an unlawful employment practice when she refused to keep quiet about harassment and about the hostile work environment she was subjected to. Complaint at page 22-23. [Doc. 14-2] Defendant argues that the retaliation she complains of is limited to her being assigned to heavy zones and her termination. While admitting that termination is a tangible employment action, Defendant denies that being required to work the heavier zones by Macedo and Villalobos was not. Defendant relies on outdated authorities cited at footnotes 185 - 194 of its brief. Plaintiff submits that *Burlington Northern and Santa Fe Railway Co,. v. White*, 126 S.Ct. 2405, 2415 (2006) controls this claim and she need only establish: 1) that she engaged in statutory protected activity under Title VII; 2) the employer carried out an adverse employment action, and 3) a causal connection exists between the protected activity and the adverse action. *See Harvell v. Westward Communications, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005). As to protected activity, employee may satisfy this element by demonstrating that they either opposed an employer's unlawful employment practice or participated in an investigation, or proceeding inquiring into the employer's unlawful practices. *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 372 (5th Cir. 1998). Here, the evidence shows that Plaintiff clearly opposed Defendant's unlawful employment practices (those of Villalobos and Macedo, as tolerated by supervisors and managers). She also participated in an investigation involving Defendant's continuing practices. Thus, Plaintiff has established that she participated in protected activity. *See Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 252 n. 17 (5th Cir. 1997). Plaintiff has demonstrated that she suffered adverse

employment actions in her reprimands, suspension, assignment to heavy zones,[34] and eventual termination. All of these adverse actions are causally linked to Macedo and Villalobos using the same analysis identified above under Section E. With respect to the write-ups, courts in the Fifth Circuit have held that in some circumstances negative write-ups were materially adverse employment actions under *Burlington*.[35] *See Pittman v. Gen'l Nutrition Corp.*, 515 F. Supp. 2d 721, 744 (S. D. Tex. 2007). As in the present case, the write-up were malicious and baseless. The same result was reached in *Yolanda Holden v. Illinois Tool Works, Inc.*, 2008 WL 183334, at *8 (S.D. Tex. Jan. 18, 2008). In the present case the summary judgment evidence shows that all the reprimands contributed to the decision to terminate Plaintiff's employment. In each case, the reprimand resulted immediately after Plaintiff engaged in protected activity by complaining or seeking to complain about the harassment or of the failure of her supervisor and local HR to take action to stop Villalobos and Macedo. With respect to the suspension, the Supreme Court in Burlington held that an indefinite suspension without back pay could well act as a deterrent, even if the suspended employee eventually received back-pay. 126 U. S. at 2417. Same result in *LeMaire v. La. Dep't of Trans. & Dev.*, 480 F. 3d 383, 390 (5th Cir. 2007).

## 2. Heavy Zone Assignments.

---

[34]Defendant argues that being assigned to heavier work zones does not constitute an adverse employment action. This argument is precluded by *Burlington Northern and Santa Fe Railway Co,. v. White*, 126 S.Ct. 2405, 2415 (2006), because it to involved claims that the complainant had been assigned to heavier work (from forklift driver to laborer) and later suspended.. This case over-ruled the cases relied on by Defendant. *See Brief at f. n. 185.*

[35]The relevant inquiry is whether such action, and others like the reprimands, suspension and false accusations, would have the effect of discouraging Plaintiff, as a reasonable person, from coming forth and complaining about unlawful employment practices or those believed to be. It would defy logic to argue that they would not have such an effect, and did have such an effect on Plaintiff. Plaintiff plainly testified that she was afraid to tell Chaffin everything because she was scared that she would go to Mary Lou (Rosa) and "and I was going to get in more problems." PRAE 239-240. Add to this the threats by Touchstone, Macedo, Villalobos, Rosa and Felton and it becomes clear why Plaintiff would fear coming forward. This practice did not reasonably lead to preventing sexual harassment complaints.

Having established that being assigned to heavier work zones as a punishment for not submitting to sexual advances by Villalobos and/or for not keeping quiet about the sexual advances of a female supervisor on female subordinates violates Section 704(a) of Title VII, Plaintiff addresses Touchstone's self-serving declaration. Plaintiff has never objected to or opposed being required to work a heavy zone as a normal business practice on non-discriminatory terms. What she has and other workers have always complained-of is the fact that both Villalobos and Macedo used this practice to gain sexual favors from subordinate employees. If Touchstone, or anyone else ever investigated this issue, it was never reported to Plaintiff nor were any findings disclosed to her to respond to. The fact of the matter is that neither Rosa, Touchstone, Chaffin, Rodriguez, Felton or Cheshire ever investigated this complaint by Plaintiff as required for Defendant to meet the affirmative defense. The record shows that in addition to Plaintiff making this complaint, numerous other employees made the same complaint. Clearly, the complaint was made to Steve Morton by Plaintiff on May 5, 2006 *See PAE 27.* Plaintiff reported to Chaffin that when she went to complain to Touchstone she got assigned to another zone the next day. PAE 22. Plaintiff reported that the same thing happens to Alonzo when she complained. Id. "Every time someone makes a complaint about Ana, they are no longer here at Mary Kay. PAE 23. "Rosa says things people say about Ana are not true." Id. Iris Torres reported to Chaffin that Ana treats her friends better than others. Id. Chaffin did not ask Torres to explain why she though Ana did this. Id. Torres reported to Chaffin that she was never given help when she was assigned to a heavy zone.[36] Id. Olivas reported to Chaffin that there is favoritism. PAE 24. Some people are helped when they stop the line, but not

---

[36]The issue of Plaintiff's performance on the line has also been raised by Defendant as an legitimate non-discriminatory reason for her termination. However, as this evidence shows Plaintiff's performance was impacted by Macedo and Villalobos refusing to help her when her zone was heavy forcing her to stop the line.

**Plaintiff's Response Brief In Opposition To Defendant's Motion For Summary Judgment - Page 40**

everyone. Villalobos helps Norma but not the others. Id. "There is no help for Gabi when she stops the line." Id. Ana acts like a supervisor. "Ana is not fair." Id. Alonzo reported that if you are in the clique you can do what you want. PRAE 25. Touchstone is good friends with Macedo outside of work. Id. "Eduardo does what he wants." Id. "There is the same group of friends. They all float - - they are not usually in the same zone." Id. On June 12, 2007 Plaintiff reported the same continuing conduct to Candie Rodriguez. Plaintiff reported that Macedo would not help her causing her to stop the line. PAE 50. Rodriguez noted that Plaintiff was the best order filler. PAE 49. Plaintiff reported to Rodriguez that Macedo was dating Sammi and lets her do whatever she wants. PAE 50. Plaintiff reported to Rodriguez that Macedo kisses Sammi when she walks by. Id. Plaintiff reported to Rodriguez that Macedo watched her closely and complained when she stopped the line but will not help her. PAE 50. Plaintiff reported that everyone get help but her and Rhonda. Id. Rhonda Bundred reported to Rodriguez that on June 12, 2007 that Macedo always lets her favorite people work the easy zones. PAE 51. Bundred identified Macedo's favorite people as Sammie, Norma and Villalobos. Id. Bundred reported that Macedo would say that if you are my friend you will not have to work hard. Id. Bundred complained of preferential treatment by Macedo when she let Sammi have a day off but not her. Id. Bundred reported to Rodriguez that if you complain you get into trouble, **you get the heavy zones."** PAE 51. As late as January 11, 2008 Plaintiff was still complaining of the continued favoritism when she went to Joanna Cheshire. See PAE 173. That this practice was sex-based is beyond cavil.

### 3. Plaintiff's Showing of Pretext.

Throughout both her Motion For Partial Summary Judgment and in this Response Plaintiff has shown how every action for which she was disciplined and eventually terminated

resulted from her opposing and complaining of harassment. *See* C/F at par. 14, 16, 16(a), 31 - 39. (Plaintiff disputes the alleged attendance issues). Defendant does not dispute that Plaintiff was terminated because of a complaint made against her by Villalobos on January 11, 2008. The record shows that Plaintiff had previously complained of Villalobos' sexual harassment on many occasions and nothing was done to protect her. The evidence shows that Defendant knew of this harassment since at least May 5, 2006 and had failed to remove Plaintiff from being required to work for Villalobos. Defendant does not dispute part of the reason why Plaintiff was terminated was the Final Written Warning issued to her as a result of a complaint made against her by Macedo on January 9, 2008 where Plaintiff was accused of failing to respond to a page. The undisputed evidence shows that Plaintiff had previously complained to Defendant that Macedo was making sexual advances toward female subordinates and rewarding those who consented. The undisputed evidence shows that Defendant failed to bring an end to the hostile work environment and failed separate the two. Defendant has also admitted that a part of the reason Plaintiff was terminated was the June 18, 2007 written reprimand she received after Macedo complained that Plaintiff was spreading rumors about her sexual orientation. The undisputed evidence shows that Plaintiff had previously complained of Macedo's inappropriate conduct and that Defendant had failed to separate the two. All of these reasons offered by Defendant to explain why Plaintiff was disciplined and terminated have been shown by the evidence to be pretextual and nothing more than acts of reprisals against Plaintiff because of her she continued to complain of Villalobos and Macedo's offensive conduct and their acts of reprisals. This record is precisely the same fact pattern found by the Fifth Circuit to be sufficient to reverse summary judgment for the employer. In *Gee v. Principi*, 289 F. 3d 342 (5th Cir. 2002). A former harassing supervisor falsely reported to decision-maker that Plaintiff had trouble

getting along with others.   The Court held that even where the decision-maker did not have

knowledge of the sexual harassment complaint, the employer had failed to establish that the decision

to deny her a promotion was not tainted by input from the harassing supervisor.   In the present case

all of the decisions to discipline and eventually terminate Plaintiff have been shown to have been

tainted by Villalobos and Macedo, individually, and collectively.   The reasons offered by Defendant

to support the adverse employment decisions that led to Plaintiff's suspension and termination are

controverted in the record.   Defendant has not established beyond peradventure that it disciplined

and terminated Plaintiff for legitimate non-discriminatory reasons.

Defendant argues that generally it is inappropriate for the court to second guess the

employer's business decisions. Defendant argues that the relevant issue is not the accuracy of the

employer's reason(s), but whether it really motivated the defendant's decision.  However, the Fifth

Circuit has recognized that proving false testimony surrounding the reasons for the employee's

termination can support an inference of pretext.  *See West v. Nabors Drilling,* 330 F. 3d 379, 390

(5th Cir. 2003).   The record here contains substantial evidence that Macedo, Villalobos and Rosa

presented false evidence that contributed to the adverse employment decisions including the

Plaintiffs' termination.

For example, the alleged threat made by Plaintiff on January 11, 2008 was two days after

Macedo had accused Plaintiff of not responding to her page. See PAE 172(b).  It occurred two days

after Plaintiff had reported to Craig Williams that Villalobos had threatened her on January 9, 2008.

PAE 177. Additionally, Rosa presented false evidence reporting that all coworkers interviewed thus

far, had reported having heard the page, when in fact many said that they had not heard it and

reported that the paging system was difficult to understand. *See footnotes 11 & 28 supra,*

**Plaintiff's Response Brief In Opposition To Defendant's Motion For Summary Judgment - Page 43**

With respect to the threat allegedly made by Plaintiff on January 11, 2008. This report was made by Villalobos. Contrary to the way Plaintiff's complaints against Villalobos were handled, here Defendant immediately conducted an investigation of his complaint. PAE 172 (b). Defendant however, produced no witness statement or identified a single person who had actually heard Plaintiff threaten anyone. Defendant's report shows that noone stated that they heard Plaintiff make a threat against Villalobos. PRAE 210-212. Both Plaintiff and Iris Torres, the person next to her denied making any such threat. Id. at p. 112 & PRAE 207 - 208. To establish the threat Villalobos brought in coworker Maria Najarro to say that a year earlier, she had heard Plaintiff say that she was going to hire someone to kill Villalobos. PRAE 210. Based upon this information Defendant determined that Plaintiff had in fact threatened Villalobos and terminated her employment on January 21, 2008. The alleged threat had was never been reported to anyone at the time. The lack of good faith in Defendant's actions is demonstrated by the fact that it knew that Villalobos had participated in a scheme in 2003 to falsely accuse Plaintiff of making a threat against him and Macedo. The threat was documented in a note written by Macedo and which was in Defendant's files. See PRAE 183. The note written and signed by Macedo is dated April 16, 2003. PRAE 180. Macedo wrote that Villalobos had told her that Plaintiff had told Alva that she was going to do something to her and him. *See C/F at par 38; PRAE 179-183.* Macedo admitted in her deposition that she wrote the  statement. PARE 180. She testified that she did not know why she wrote it. PRAE 181. Macedo testified that at the time she wrote the note she had no knowledge that Plaintiff had ever threatened either her or Villalobos. PRAE 182. Neither Rosa, Felton or Cheshire took this prior false report  into consideration when they determined to fire Plaintiff. Neither considered the fact that this the latest report of a threat by Villalobos came immediately after Plaintiff complained

to Williams that Villalobos had threatened her. PRAE 177.

There is also substantial evidence of a cover-up by both Touchstone and Rosa. There is also disputed issues of fact that the reason Plaintiff was reprimanded on June 18, 2007 was because she reported Macedo inappropriate sexual advances on June 12, 2007 to Human Resources. This is direct evidence of retaliation and of impermissible discrimination by Defendant. If Plaintiff was engaged in protected activity when she reported to Human Resources that Macedo was engaged in sexually inappropriate conduct with subordinate employees, and if she was reprimanded for this report, Defendant violated her rights under Section 704(a) as a matter of law. See Plaintiff's Brief In Support of Motion For Partial Summary Judgment at page 19. Alternatively,   using a mixed motive analysis established in *Desert Palace, Inc. v. Costa,* 539 U. S. 90 (2003),   Plaintiff need not prove every reason offered to justify Plaintiff's termination is false to withstand summary judgment. Even if there is some evidence that Defendant considered Plaintiff's stopping the line excessively, this is still a disputed issue. *See discussion supra at Section K - 2.* The issues related to her alleged intimidation of coworkers is again a disputed issue since the evidence shows that Defendant only investigated Plaintiff's conduct when complaints were made against her, but not the complaints she made against Macedo and Villalobos. Beyond this there is no record of any complaint being made by a coworker and investigated by Defendant. If there were complaints Defendant never previously investigated them and gave Plaintiff proper notice and opportunity to defend herself. A showing of a prima facie case and pretext by Plaintiff is sufficient to survive summary judgment.   *Turner v. Baylor Richardson Medical Center,* 476 F. 3d 337, 345 (5th Cir. 2007) (citing *Reeves v. Sanderson Plumbing Products,* 530 U. S. 133, 146-48 (2000)).

### L. Plaintiff's Gender and Assault Claims.

Plaintiff does not oppose dismissal of these two claims.

## CONCLUSION

For all of the foregoing reasons Plaintiff respectfully requests that this Honorable

Court deny Defendant's Motion except where not opposed by Plaintiff herein.

Respectfully filed this 24th day of July, 2009.

ROBLES LAW FIRM

/s/ Gabriel H. Robles
GABRIEL H. ROBLES
TBN: 17118100
8625 King George Dr.
Suite 234
Dallas, Texas 75235
Tel: 214-361-2411
Fax: 214-361-7074

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I, the undersigned attorney for Plaintiff Guadalupe Herrera, hereby certify that I did

on the 24nd day of July, 2009, provide a copy of the foregoing brief to Counsel

for Defendant, via electronic mail addressed to:

Rodolfo Rodriguez, Jr.
John L. Turner
Gruber. Hurst. Johansen & Hail, LLP
Fountain Place
1445 Ross Avenue, Suite 2500
Dallas, Texas 75202

/s/ Gabriel H. Robles
Gabriel H. Robles

**Plaintiff's Response Brief In Opposition To Defendant's Motion For Summary Judgment - Page 46**